KIRK and others *v.* MILWAUKEE DUST COLLECTOR MANUF'G Co.[1]

(*Circuit Court, E. D. Wisconsin.* October, 1885.)

1. CONTEMPTS—FEDERAL COURTS—JURISDICTION.

Where a cause has been removed from a state to a federal court, pending an application to punish one of the parties for contempt by disobeying an order of the state court, the federal court has no jurisdiction to hear and determine such application.

2. SAME—REV. ST. § 725.

The sole power of the federal courts to punish for contempt of their authority both at law and in equity is derived from section 725 of the Revised Statutes, and they cannot impose penalties under the state statute, in the form of pecuniary indemnity to the party injured.

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

**3. SAME—NATURE OF CONTEMPT PROCEEDINGS IN FEDERAL COURTS.**

A contempt proceeding in the federal courts is in its nature criminal, and must be governed by the rules of construction applied in criminal cases.

**4. SAME—REMOVAL ACT OF MARCH 3, 1875.**

It is a general and elementary principle that that court alone in which a contempt is committed has power to punish it or to entertain proceedings to that end; and the removal act of March 3, 1875, does not empower a federal court to inquire into an alleged contempt of the state court committed before the case is removed.

**5. SAME—SECTIONS 4 AND 6 OF THE REMOVAL ACT CONSTRUED.**

The provisions of sections 4 and 6 of the act of March 3, 1875, point to all such proceedings and orders as have relation to the prosecution and defense of the suit in due course, and the ultimate results aimed at in the litigation.

In Equity.

*Flanders & Bottum* and *Quarles & Spence,* for plaintiffs.

*Cotzhausen, Sylvester, Scheiber & Sloan,* for defendants.

DYER, J. This is a suit removed from the state court to this court. The prayer of the complaint is that a certain license granted to the defendant by the plaintiffs May 1, 1883, for the manufacture and sale of certain patented machines known as dust collectors, may be decreed to be canceled and annulled on the ground that the defendant has violated certain conditions of the license, and that the defendant may be enjoined from further manufacturing and selling said machines. The answer of the defendant controverts the allegations of the complaint, and, as is permissible under the code practice, sets up an equitable counter-claim in which it is asked among other things that the plaintiffs be enjoined, *pendente lite,* from engaging in or resuming the manufacture and sale of the dust collectors covered by the license, and from slandering the title of the defendant acquired by said license, and from committing any acts in violation of the alleged rights of the defendant as licensee.

After issue was thus joined, the state court, on application of the defendant, granted a temporary injunction restraining the plaintiffs "from engaging in or resuming the manufacture and sale of dust collectors within the United States in so far as exclusive license was vested in the defendant under the agreements mentioned in the pleadings and under the letters patent set forth in the answer, and also from slandering the title of the defendant to manufacture, sell, and license dust collecting machines under said letters patent, or in any way questioning or controverting the right of the defendant to manufacture and sell said machines, and from all attempts to divert the good-will and patronage of the defendant to themselves or into other channels." This injunctional order was granted June 6, 1885, and, as originally entered, was to remain in force until June 20th. On the twenty-fifth day of June a further order was made continuing the injunction in force until the final hearing of the cause.

Subsequently, and before the removal of the case to this court, it being claimed by the defendant that the plaintiffs were violating the injunction, an order was obtained that the plaintiffs show cause on the

first day of September, 1885, why they should not be punished for contempt in disobeying said injunction. This order was served on the plaintiffs Bean and George T. Smith Middlings Purifier Company, and on one Faustin Prinz, who was alleged to be a party to the violation of the injunction. On the first day of September, and before the contempt proceedings were heard by the state court, the case, on the petition of the plaintiffs, was removed to this court under the removal act of March 3, 1875.

An entry in the record indicates that the defendants' counsel sought to have the judge of the state court dispose of the pending application to punish the plaintiffs for contempt, before the transfer of the case to this court was ordered, but he refused to entertain or pass upon the contempt proceeding.

After the case came to this court, on *ex parte* motion of the defendant, a time was fixed for hearing the application thus made in the state court to punish the plaintiffs for contempt, and a further order to show cause addressed to the plaintiffs Kirk and Fender, similar to that made by the state court, was entered, which, with the affidavits thereto attached, was served upon Kirk, but not upon Fender. As the plaintiffs are all non-residents of the state of Wisconsin, service of the orders to show cause was made upon such of them as were served, out of the state. When this matter came on for hearing, a question *in limine* arose as to the authority and jurisdiction of this court to entertain the contempt proceeding or to proceed to judgment therein, it appearing that the acts complained of, which constituted the alleged contempt, were committed while the case was pending in the state court and before its removal to this court; it being contended that this court did not, by virtue of the removal of the principal case, acquire authority to punish the plaintiffs for their alleged disobedience, before the removal, of the injunctional order of the state court. The court directed this question to be orally argued at the bar, and after very able arguments on both sides, this is the question to be now decided.

A section of the state statutes (Rev. St. Wis. § 2565, c. 117) provides that every court of record shall have power to punish, as for a criminal contempt, persons guilty, among other things, either of disorderly, contemptuous, or insolent behaviour committed during its sittings, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impede the respect due its authority, or any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings, or willful disobedience of any process or order lawfully issued or made by it, or resistance willfully offered by any person to the lawful order or process of the court. And the same statute provides that any such contempt shall be punished by fine not exceeding $250, or imprisonment not exceeding 30 days, or both. Another enactment in the same Revision (Rev. St. Wis. c. 150) entitled "of proceedings to punish contempts to protect the rights

of parties in civil actions," provides that "every court of record shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in an action or proceeding depending in such court * * * may be defeated, impaired, impeded, or prejudiced, in the following cases;" one of which enumerated cases is that of "parties to actions * * * and all other persons * * * for any * * * disobedience to any lawful order, judgment, or process of such court," and "all other cases where attachments and proceedings as for contempt have been usually adopted and practiced in courts of record, to enforce the civil remedies of any party, or to protect the rights of any such party." Section 3490 of this chapter provides that "if an actual loss or injury has been produced to any party by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant. * * * Where no such actual loss or injury has been produced, the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings, and in no case can the imprisonment exceed six months."

The power of the federal courts to punish for contempts is derived from section 725 of the Revised Statutes of the United States, which provides that "the said courts shall have power * * * to punish by fine and imprisonment, at the discretion of the court, contempts of their authority: provided, that such power to punish contempts *shall not be construed to extend to any cases* except the misbehavior of any persons in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

The last clause in section 4 of the removal act of March 3, 1875, provides that "all injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed." And section 6 of the same act provides that "the circuit court of the United States shall, in all suits removed under the provisions of this act, proceed therein as if the suit had been originally commenced in said circuit court, and the same proceedings had been taken in such suit in said circuit court as shall have been had therein in said state court prior to its removal."

Before considering what effect is to be given to these provisions of the act of March 3, 1875, it is to be observed that the state statutes, as we have seen, provide either for the punishment of a party who disobeys a lawful order of the court as a criminal contempt, or for punishment in the form of pecuniary indemnity to the party injured by

the misconduct which constitutes the contempt; and in the latter class of cases the punishment may indirectly tend to promote the rights and advance the remedies of the party to the action thus injured. The sole power of the federal courts to punish for contempts of its authority both at law and in equity is derived from section 725 of the Revised Statutes. It was argued by the senior counsel for the defendant that such power was inherent in a court of equity, and not dependent upon the statutory provision on the subject; and in his discussion of the question he made a clear and forcible statement of the powers of a court of equity as those powers were originally exercised. But it will be observed that while the statute of the United States is in a certain sense declaratory of an inherent power in the federal courts to punish for contempts, it is restrictive and limits the exercise of that power to certain well-defined classes of cases. That it includes the exercise of this power by a court of equity is evident from the use of the words "order, rule, *decree*," and the rules of practice for the courts of equity bearing upon this question, and referred to by counsel, were adopted in subordination to the statute which had its origin in 1831.

In *Ex parte Robinson*, 19 Wall. 510, Mr. Justice FIELD said:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the act of congress of March 2, 1831. The act, in terms, applies *to all courts*. Whether it can be held to limit the authority of the supreme court, which derives its existence and powers from the constitution, may be perhaps a matter of doubt; but that it applies to the circuit and district courts, there can be no question. These courts were created by act of congress; their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted."

Congress having legislated upon the subject of contempts, and the federal courts having derived their sole power to punish for contempts from the act of congress, (Rev. St. § 725,) it follows irresistibly that the state court practice in such cases cannot be followed here. Putting out of view for the moment the effect of the provisions of the removal act of March 3, 1875, which have been quoted, it is perfectly clear under all the adjudications that a contempt proceeding in the federal court is in its nature criminal, and must be governed by the rules of construction applied in criminal cases. *New Orleans* v. *Steam-ship Co.*, 20 Wall. 392; *In re Ellerbe*, 13 Fed. Rep. 532, where it is said that contempt of the authority of a federal court "has frequently been held to be an offense against the United States, within the terms of the provision of the constitution which authorizes the president to pardon such offenders;" *U. S.* v. *Atchison, T. & S. F.*

*Ry. Co.* 16 Fed. Rep. 853; *U. S.* v. *Berry,* 24 Fed. Rep. 783; *In re Mullee,* 7 Blatchf. 23. Such it appears to be well settled, is the character of proceedings to punish for contempt in the federal courts. Proceeding a step further, it is a general and elementary principle, in support of which authorities are not needed, that that court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it, or to entertain proceedings to that end. *Ex parte Bradley,* 7 Wall. 364–372; *Lessee of Penn* v. *Messinger,* 1 Yeates, 2; *Passmore Williamson's Case,* 26 Pa. St. 9; Rapalje, Contempts, § 13.

From the foregoing it follows that in the absence of any provision in the act of March 3, 1875, giving to this court the power now invoked, it would be without power to inquire into or deal with the alleged contempt. This would be so because of the general principles that have been stated. The question then is, and upon this point the contention hinges, do the clauses in sections 4 and 6 of the act which have been quoted, mean that, upon the removal of a case from the state court, a pending and unadjudicated contempt proceeding comes with it, and that the United States court shall have the power to take up that proceeding and punish the party, if guilty, for his violation of the order and contempt of the authority of the state court? It was insisted on the argument that this question was determined by this court in favor of the exercise of such power in *Williams Mower & Reaper Co.* v. *Raynor,* 7 Biss. 245. In this counsel are in error. There the state court had made an order that the defendant deliver to the plaintiff, to enable him to prepare his pleading, sworn copies of entries in the defendant's books and of certain writings alleged to be in his possession. The defendant disregarded the order and was attached for contempt. An inquiry being instituted, he was adjudged guilty of misconduct, and was ordered forthwith to deposit the books and writings in court, and to pay to the plaintiff the costs of the proceeding, and to stand committed until the order was complied with. Here the party had been adjudged guilty of the contempt and the penalty had been imposed. The court whose order had been disobeyed had pronounced the punishment, and thereby asserted its authority, and in that state of the record the case came to this court. It was held that that proceeding was a step taken in the principal action to secure the production of the books and papers for the benefit of the plaintiff, and stress was laid upon the point that the proceeding did not therefore rest wholly in the defiance of the authority of the court. "It necessarily involved," said the court, "the enforcement of a civil remedy to which it had been adjudged the plaintiff was entitled in the action, and the protection of an alleged right of the plaintiff for the purpose of enabling him to proceed therein." It by no means follows from that decision, if the order of the state court in that case had been purely penal, made for the sole purpose of vindicating the authority of the court, that this court would have taken

it up and proceeded to enforce it. Even less does it follow, if the proceeding had been one purely of contempt of the state court affording no direct relief to the plaintiff in promotion of his action, and had been undetermined at the time of removal, that this court would have exercised jurisdiction of the proceeding. The provisions of sections 4 and 6 of the act of March 3, 1875, point to all such proceedings and orders as have relation to the prosecution and defense of the suit in due course and the ultimate results aimed at in the litigation. They relate to all such steps as have been and may be taken towards securing the ultimate relief sought; that is, that the case shall go on as if originally commenced in the court to which it is removed, and that the proceedings already taken in advancement of the suit shall stand as if taken in that court. This I believe is the general understanding of the courts of the meaning of these provisions.

It is contended, however, that the contempt proceeding was auxiliary to the main action, and was of a civil nature and taken in promotion of a civil remedy. That is true to the extent that the state court had the power to inflict punishment in the form of pecuniary indemnity to the party injured. But how can this court deal with it, if at all, except as a proceeding of a criminal nature under section 725? And in that case it would simply punish as the statute directs, by fine or imprisonment, for acts done in derogation of the authority of another court, when the suit was pending in that court. A power so extraordinary should be clearly given before it is exercised. In the present state of decision I regard the proposition as indisputable that this court, if it were to attempt to take jurisdiction of this proceeding, could not administer penalties according to the state statute. It would have to be treated as a purely penal proceeding. I conceive this to be the logic of the decision of the supreme court in *Ex parte Fisk*, 113 U. S. 713, S. C. 5 Sup. Ct. Rep. 724. It was there held that as congress had legislated generally on the subject of evidence, and had conferred no authority to compel the examination of a party before trial, but on the contrary had declared that oral testimony should be taken in open court, an order for such examination made by the state court before the removal of the cause could not be enforced by the United States court. Analogous to this is the state of the case here. Congress having legislated on the subject of contempts and made a prosecution for contempt a purely penal proceeding, with no provision for pecuniary indemnity to a party injured, this court is under the restraint of the federal statute, and cannot enforce the state statute. Thus the remedial character of the proceeding is taken away. There are, it is true, some cases originally brought in the federal courts in which those courts have attempted to adopt a practice analogous to that authorized by the state statutes in imposing penalties in contempt proceedings for the benefit of a party to the suit. But in two of the cases which have served as precedents for such a proceeding, the validity of the practice is not dis-

cussed. *In re Mullee*, 7 Blatchf. 23; *Doubleday* v. *Sherman*, 8 Blatchf. 45. See, also, *Searls* v. *Worden*, 13 Fed. Rep. 716. In *U. S.* v. *Atchison, T. & S. F. Ry. Co., supra*, Judge McCrary held that the purpose of a proceeding to punish for contempt "is not to afford a remedy to the party complaining, and who may have been injured by the acts complained of. That remedy must be sought in another way. Its purpose is to vindicate the authority and dignity of the court. In such a proceeding the court has no jurisdiction to make any order in the nature of further directions for the enforcement of the decree;" citing authorities in support of his conclusion. This I think is the sound view. "Section 725," says the supreme court, in *Ex parte Robinson, supra*, "is a limitation upon the manner in which the power may be executed, and must be held to be a negation of all other modes of punishment."

In *Fanshawe* v. *Tracy*, 4 Biss. 497, Judge Drummond said:

"A party who has conducted himself in such a way as to justify the court in punishing him for contempt, or for disobedience of its order, has committed an offense against the United States. The court is the mere instrument or organ of the government in punishing the person for the offense which he has committed. * * * If he is imprisoned by order of the court, it is the act of the United States. The United States is the custodian of his person. If he is fined by the court, the fine goes to the United States; and although it may be a proceeding growing out of a civil action, it is distinct in its character in many of its essential particulars. The parties may not have, do not have, absolute control over the proceedings. The United States is the party to the proceeding, and not the mere defendant or plaintiff upon the record."

See, also, *U. S.* v. *Berry*, 24 Fed. Rep. 783. To the same effect are the adjudications in *New Orleans* v. *Steamship Co., supra; Passmore Williamson's Case, supra*, and *First Cong. Church* v. *Muscatine*, 2 Iowa, (Cole's Ed.) 69. This proceeding, therefore, if prosecuted here, would be one on the part of the United States in a court of the United States to punish for a contempt of the authority of a state court.

Since the nature and purpose of proceedings to punish for contempt in the federal courts are such as have been pointed out, is it a sound construction of the act of March 3, 1875, to hold that it was intended by that act to give to the court to which a suit has been removed, the authority, and to impose upon it the duty, of taking cognizance of a proceeding pending and undetermined in the state court at the time of removal, for the punishment of a party who had been guilty of a contempt of that court? Can such be held to be the intention of the act in view of the fact that the proceeding, if entertained here, must be purely penal in its character, and is nothing less than the imposition of punishment by one court for an offense committed against the authority of another court? Upon deliberate consideration I am of the opinion that it was not intended by that act that this court should exercise such a power. The right to take jurisdiction over such a proceeding should be clear, to justify its ex-

ercise. If there is grave doubt of the authority of the court, it may well pause at the very threshold of the proceeding. The jurisdictional right should be clear, not doubtful, especially as the power invoked is extraordinary.

It was suggested by the junior counsel for the defendant—and the suggestion seemed at the time not without force—that the only question now requiring consideration is whether the court has not the right to institute inquiry upon the orders to show cause, as disconnected from the question of punishment, if the parties should be found guilty. But this controversy, even at its present stage, really involves ultimate results, and it would be labor without profit to go into the inquiry at all if it is evident that in the end the court will be without power to take final action.

As a result of the views expressed, the court is of opinion that it should decline to proceed with the proposed inquiry into the alleged misconduct of the plaintiff before the case was removed to this court, for want of jurisdiction, and that the order to show cause granted by this court should be vacated.