In re GITKIN.

(District Court, E. D. Pennsylvania. September 18, 1908.)

No. 3,013.

1. BANKRUPTCY—"CONTEMPT"—BEFORE REFEREE—ACTS CONSTITUTING.

A bankrupt, who on his examination before the referee deliberately and willfully swears falsely, or falsely denies knowledge of matters about which he is interrogated, refuses "to be examined according to law," and is guilty of "contempt," under Bankr. Act July 1, 1898, c. 541, § 41a (4), 30 Stat. 556 (U. S. Comp. St. 1901, p. 3437).

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1489–1492; vol. 8, p. 7614.]

2. SAME—COMMITMENT FOR CONTEMPT—PROCEDURE.

A court of bankruptcy has no power to commit any person for a contempt committed before a referee, except strictly in accordance with the provisions of Bankr. Act July 1, 1898, c. 541, § 41b, 30 Stat. 556 (U. S. Comp. St. 1901, p. 3437), which requires that the proceedings shall be based on a certificate of the referee.

In Bankruptcy. On rule to show cause why the bankrupt should not be committed for contempt.

J. Howard Reber, for trustee.

B. F. McAtee, for bankrupt.

HOLLAND, District Judge. Joseph P. Gitkin filed a voluntary petition in bankruptcy under date of January 4, 1908, and an adjudication was duly entered thereon on January 18th of the same year. Robert W. Bowlby was elected trustee on February 5th, and subsequently qualified as such. The case was referred to George F. Coffin, referee, at Easton, Pa., and on February 5th and 10th the bankrupt appeared before him, in response to a subpœna, for the purpose of an examination, in accordance with the provisions of section 21a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]). The trustee concluded that the witness, in his examination upon both occasions, committed perjury, and through his counsel presented a petition on February 24, 1908, in which he set forth that Joseph P. Gitkin, the alleged bankrupt (1) in the progress of said several examinations testified with willful falsity; (2) said Joseph P. Gitkin, during the progress of the several examinations, repeatedly and continuously testified in a vague, unsatisfactory, ambiguous, and contradictory manner, with the intention of obstructing the administration of justice and preventing the collection and distribution of his property and the discovery of the whereabouts of the same or any considerable portion thereof. Then follows a statement in the petition setting forth, in a summary manner, the matters to which the alleged bankrupt testified showing willful perjury and the intentional,

vague, and ambiguous answers. The witness testified that he had borrowed certain sums of money from three different persons, and that at the time he received the last of the sums from each person he noted the amount in a book, which he produced at the hearing, showing that it was entered therein in June, 1907, and stated he made the entry at that time. An examination of the book shows that it was not published until subsequent to that date, and when the witness' attention was called to this fact he then said that he had copied it into the book produced at the examination from another book and had thrown the other book away. This is a fair sample of the witness' entire testimony, and is urged by the petitioner to be obviously false, showing willful and deliberate perjury. There appears page after page of testimony in which the bankrupt pretended not to know the meaning of what he had written in a book only two months before in connection with his business and his customers, and the only response he made to questions in regard to it was, "I don't know."

Upon this petition a rule was granted upon Gitkin "to show cause why he should not be held in contempt of court for the reasons in the petition set forth." To this he made answer, in which "he denies that the testimony given by him was false, but, on the contrary, avers that his testimony was truthful and responsive to the various questions propounded to him." The answer further objects to the proceeding, for the reason that the rule was granted upon a petition filed by the trustee and not upon a certificate of the referee, as required by section 41b of the bankrupt act, and for this reason asks that the proceeding be dismissed and the bankrupt discharged.

The petition and answer were referred by the court to George F. Coffin, referee, for the purpose of reporting on the allegations set forth in the petition and as to whether the alleged bankrupt had been guilty of contempt, and on May 16th the report was filed, in which the referee finds as follows:

"That Joseph P. Gitkin did commit willful perjury in his examination held before the referee on February 5th and February 10th, and that said perjury consists in his testimony relative to the amount of stock he had on hand in his store on July 1, 1907, to January 1, 1908. * * * The referee finds as a fact that the said Joseph P. Gitkin committed willful perjury in testifying as he did in relation to Exhibit B, testimony relating thereto, * * * under date of February 10th. The testimony as set forth in reference to the memorandum book, 'Exhibit B,' is so evidently false that it merely needs the reading of it to convince the most skeptical person that the bankrupt was willfully and continuously committing perjury in every answer he made."

An examination of the testimony taken by the referee convinces me that Gitkin was testifying falsely through nearly the entire examination. It shows a determination to refuse to give the trustee and creditors any information whatever as to the disposition of his property, or to explain how it came about that he was indebted in certain amounts, which, from all the facts and circumstances, were plainly and certainly claims set up for the purpose of further depleting the already dissipated estate. He pretended to be ignorant of facts which obviously would have been known to any one who had sufficient intellect to perform the most ordinary duties of life, and the evasion and

falsity of the answers are so palpable, so clear, and so persistent as to establish beyond any possibility of a doubt the findings as reported by the referee.

The referee, however, seems to be in doubt as to whether willful perjury and the giving of testimony in a vague, unsatisfactory, ambiguous, and contradictory manner, with the intention of obstructing the administration of justice and preventing the collection and distribution of his property, can be punished as a contempt of court. The things for which a person can be punished for contempt before referees are set forth in section 41a, which provides that:

"A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process or writ; (2) misbehave during a hearing or so near the place thereof as to obstruct the same; (3) neglect to produce, after having been ordered to do so, any pertinent document; or (4) refuse to appear after having been subpœnaed, or, upon appearing, refuse to take the oath as a witness, or after having taken the oath, refuse to be examined according to law."

The fourth subdivision of section 41a requires the bankrupt to appear, to take the oath as a witness, and after having taken the oath to submit to an examination according to law. After having taken the oath as required, a refusal to answer questions at all would subject the witness to punishment for contempt for a refusal "to be examined according to law." If a witness be not allowed to obstruct and hinder the administration of a bankrupt's estate and prevent an ascertainment as to the disposition of his property by refusing to answer questions in connection with these matters, and if it be true that a refusal to answer is violative of the command of the fourth subdivision of section 41a of the bankrupt act, requiring a witness to submit to "an examination according to law," can it be said that one who deliberately and willfully makes false answers to all questions propounded, thereby as effectually closing the avenues of inquiry as to the bankrupt's estate as if he had refused to answer, has not refused "to be examined according to law" because he makes answer, when his answers are intentionally and plainly false and effect the same result as a refusal to answer at all? It is very plain that where a bankrupt persistently, through page after page of his testimony, answers "I don't know" to questions about his property which he must and evidently does know, and could make full answers, he refuses "to be examined according to law" with the same effect as though he refused to make answer at all. An "examination according to law" requires that questions shall be answered, and answered truthfully, and a witness does not satisfy the law by simply making answer which gives absolutely no information whatever in regard to the questions being inquired about, when it is very plain that the witness is entirely competent to give the desired information, but is deliberately and willfully prevaricating in order that the truth may not be discovered. So that it is our judgment that a witness who refuses to answer, or makes willfully false answers, and thereby obstructs the prompt and proper administration of the bankrupt law, is guilty of contempt, and can be punished under section 41b of the act. In re Salkey, 6 Biss. 280, Fed. Cas. No. 12,254;

In re Fellerman (D. C.) 149 Fed. 244, 17 Am. Bankr. Rep. 785; Ex parte Bick (C. C.) 155 Fed. 908; Loveland (2d Ed.) 622.

This bankrupt being guilty of contempt, the facts should have been certified as requested by counsel for the trustee. Instead of such a certificate, as required by section 41b of the bankrupt act, this proceeding was started by a petition of the trustee upon which a rule to show cause was granted, and the respondent, by his counsel, objects to the proceeding, for the reason that it does not comply with the requirements of the act of Congress and there is therefore no warrant in law for the commitment of Gitkin for contempt under proceedings of this kind. Section 725 of the Revised Statutes (U. S. Comp. St. 1901, p. 583) points out very distinctly the cases in which District and Circuit Courts are authorized to punish for contempt. They are limited to three classes of cases: (1) Where there has been misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice; (2) where there has been misbehavior of any officer in his official transactions; (3) and where there has been disobedience to any order, process or command of the court. Ex parte Robinson, 86 U. S. 512, 22 L. Ed. 208.

The power of the courts to punish for contempt has always been looked on in this country with much jealousy, and a very strong disposition shown in all jurisdictions to restrain it. It has been declared to be arbitrary in its nature (Batchelder v. Moore, 42 Cal. 412), and to be an exception to the provisions of the Constitution of the United States and not to be extended in the least degree beyond the limits imposed by statute (Boyd v. Glucklich, 8 Am. Bankr. Rep. 401, 116 Fed. 136, 53 C. C. A. 451). The sole power of a federal court to punish for contempt of its authority, both at law and in equity, is derived from this section. Ex parte Robinson, supra; Kirk v. Milwaukee Dust Collector Co. (C. C.) 26 Fed. 505. The proceeding is in its nature criminal, and must be governed by the strict rules of construction applied in criminal cases. "Its purpose is not to afford a remedy to the party complaining, and who may have been injured by the act complained of. That remedy must be sought in another way. Its purpose is to vindicate the authority and dignity of the court." Kirk v. Milwaukee Dust Collector Co., supra, and cases there cited.

Whether or not the District Court would have punished the misbehavior of the alleged bankrupt before the referee under proceedings of the kind had in this case if there had been no statutory procedure pointed out by the bankrupt act need not now be inquired into, although it has been held that the District and Circuit Courts have jurisdiction under section 725 of the Revised Statutes to punish for misbehavior in presence of subordinate officers, such as commissioners, masters in chancery, and referees appointed by these courts (United States v. Anonymous [C. C.] 21 Fed. 761); but, as we have said, it is not necessary to extend this inquiry, because Congress has enacted a mode of procedure for contempt proceedings before a referee in bankruptcy. Section 41b requires that:

"The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and, if it is

such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy."

This section makes it plain that the power to commit for contempt before a referee was not conferred upon the latter, but was conferred on the judge of the court of bankruptcy before whom the matter must be certified in accordance with its provisions; and, in order that the court may take cognizance of the offense and punish the offender, he must be proceeded against strictly in accordance with the mode pointed out by the bankrupt act, and any deviation from that procedure the bankrupt may take advantage of on a motion to dismiss the proceedings. The statutory procedure, being full and complete, must be strictly followed, and a failure to do so will be fatal.

For the reasons given, the rule to show cause why the alleged bankrupt should not be committed for contempt is discharged.