## In re BLITZ.

### (District Court, E. D. Pennsylvania.   April 28, 1916.)

### No. 4280.

1. BANKRUPTCY ⬳229—EXAMINATION OF BANKRUPT—CONTEMPT—"REFUSAL TO BE EXAMINED."

The "refusal to be examined" according to law, for which a bankrupt may be committed for contempt, may be manifested by a formal refusal, by standing mute, by evasive or inconclusive answers, or by palpably false and flagrantly untruthful answers; but it always involves the element of contumaciousness, and must be distinguished from mere lack of candor or frankness, and from untruthfulness and plain perjury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. ⬳229.]

2. BANKRUPTCY ⬳229—EXAMINATION OF BANKRUPT—CONTEMPT—PROCEEDINGS FOR COMMITMENT.

Before a bankrupt is committed for contempt for refusing to be examined, he should be first admonished and given an opportunity to purge himself, after which a specific question should be asked and a specific answer required; and where the record shows merely that he answered questions put to him as to the acquisition and sale of property by saying that he did not know, or that he did not recollect, and was not informed that his answers were insufficient until a petition was filed asking for his commitment, the commitment will be refused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. ⬳229.]

In Bankruptcy.   In the matter of Simon Blitz, bankrupt.   On certificate of the referee that the bankrupt be adjudged to be in contempt for refusal to be examined.   Commitment for contempt refused, and case remitted to the referee for further proceedings.

Raymond A. White, Jr., and Maurice W. Sloan, both of Philadelphia, Pa., for trustee.

Edwin Fischer and William M. Lewis, both of Philadelphia, Pa., for bankrupt.

DICKINSON, District Judge.   [1] It is obvious that a refusal "to be examined according to law" means a refusal in fact and effect. The form of the refusal, or in what way manifested, is of no importance.   A formal refusal by a witness to answer questions, displayed by a flat and defiant declaration that he would not answer, is one form. Standing mute is another.   Evasive, inconclusive, or irresponsive replies to clear and plain inquiries is another.   Palpably and flagrantly untruthful answers is still another.   In re Gitkin (D. C.) 164 Fed. 73. There is, it must be observed, in all of these instances, the element of contumaciousness; something of the element of defiance; something which can be distinguished from mere lack of candor or frankness, or from untruthfulness, or even from plain perjury.   Refusing to testify is one thing.   Testifying falsely is another thing.   Although equally reprehensible and open to condemnation, they are distinct and separate, and the distinction should be kept in mind, or confusion will result in visiting upon the offender the deserved punishment.   The line

of demarcation is distinct enough, but cannot be as readily drawn. This can be best left to the discriminating judgment of the referee before whom the bankrupt appears, and such judgment should not lightly be disturbed.

[2] We think, however, a commitment for contempt should be preceded with certain formalities. The witness would ordinarily be permitted to purge himself by showing a willingness to recant and to testify fully. He should therefore be first admonished. This should be followed with a specific question, and an answer required. The real attitude of the witness will be then disclosed, and any further proceeding be clear-cut and definite. The difficulties and complications resulting from any other course is well shown by this record.

The petition in this case was filed in January, 1912. The examination of the bankrupt was conducted upon the theory that his failure was not an honest one. Within a few months of bankruptcy he had bought largely. The property and assets disclosed showed a heavy depletion. It was the plain duty of the bankrupt to have given a truthful and full account of all of the property he had bought and what had become of it, and of the money proceeds of any which had been sold. In this duty the referee finds he wofully failed. He concealed and falsified the real quantity of goods which had come into his possession, by professing ignorance of what the real quantity was, and by falsely estimating its value. When compelled to give a reluctant admission of the receipt of goods, he concealed and falsely testified concerning what had become of them. This was done by testifying to sales never in fact made, and as to which he could give neither the quantity nor value of what was sold, or to whom sold, or, if the sale was admitted, by making a false estimate of the loss on such sales. There was a like concealment and falsification of what was done with the money which was traced to his possession. On the whole, he made a distinctly bad impression upon the referee, who was fully convinced that the bankrupt had possession or control of money and property a disclosure of which he was evading by false statements of some facts and falsely professed ignorance of others. The report of the referee well vindicates these conclusions.

Counsel for bankrupt accounts for these seemingly condemning conditions and appearances on the theory that through business incapacity and sickness and business demoralization he lost account of what he was doing, and in consequence was in real ignorance of his actual financial condition, except the net result that he had sold what he could for anything he could get for it, and had paid out the money to the creditors who were demanding payment. The specific, or at least the main, feature of his testimony which is made the proposed basis of his commitment, is this: He testified to a sale of part of his stock, from which he realized a sum which he finally fixed at $300. What he sold was shoes. How many, he did not know. They were taken away in a wagon, which he helped to load. Each pair of shoes was in a box, and the boxes in cases. How many boxes there were, or how many cases, he did not know. What the cost or selling price was, either in the aggregate or of any of them, he did not know. The

man to whom he sold them was a stranger, whose name only was known. . Who he was, or where he could be found, he did not know. The man happened to come into the store, and a deal was made for $300, without either buyer or seller knowing the quantity of goods which was the subject of the sale. .

This testimony was given April 16, 1912, at a hearing at which counsel for the bankrupt was not present. The bankrupt had been previously called for examination on January 19, 1912, and had testified in part. The above facts were elicited through questions the answer to which was, "I don't know," or "I don't recollect," or their equivalent. There was nothing which took place, except a searching cross-examination of the witness. No complaint was made to the referee that the witness was evading the questions, or in effect refusing to testify. The referee expressed no dissatisfaction with the witness, and did not call upon him to make other answer than that which he made. Apparently counsel for the trustee was content with the results at the time. At least nothing was done until September 9, 1913. Then a petition to have the bankrupt certified for contempt was presented to the referee. To this an answer was filed, by which the bankrupt purged himself of any such purpose or intent, and tendered himself for full examination. He was afterwards examined by his counsel, and cross-examined by counsel for the trustee. The only additional fact (if it can be called such) which was brought out was that the witness had casually met this quondam purchaser on the street and had learned that there were 400 pairs of shoes in the purchase. On cross-examination he was taken back over the same ground as at his first examination, and repeated his former answers.

The referee certifies the bankrupt to be a proper subject for a commitment for contempt. The exceptions to his report raise the question of the propriety of contempt proceedings under the circumstances. Without subscribing to the soundness of the propositions advanced on behalf of this bankrupt, the conclusion reached is that we cannot see our way clear to commit him for contempt on the showing of this record as it is. A bankrupt is required by the law to testify, and to testify truthfully. The test of this first obligation is not the truth or falsity of his testimony, but whether he is breaking his second obligation in the attempt to evade the first. If the referee is convinced the answer is a mere evasion, we think the proper practice is to give the witness formal notice that he must answer, and to enter of record a formal finding that the answer is an evasion, and to require a real answer. An analogy may be found in the practice of the courts in the trial of a case. The trial judge finds the fact upon which the distinction made rests. In the one case he commands the witness to answer, and commits him for a refusal. In the other, he holds him to bail, or commits him, to answer to the charge of perjury. To confuse the two offenses works confusion in the after consequences, of which we have an illustration in this case. If this bankrupt were committed for contempt, it would not be clear that he was not being punished for the offense of perjury, punishment for which is barred by the statute.

The disposition made of the case is to refuse the commitment and remit the case to the referee for further proceedings in the cause.