No. 24,629.

GEORGE L. HESS, *Appellant,* v. MABLE C. HESS, *Appellee.*

SYLLABUS BY THE COURT.

DIVORCE—*Trial and Judgment Before a Judge Pro Tem—Jurisdiction of the Regular Judge to Enforce the Judgment Rendered by the Judge Pro Tem.* Where a regular district judge has disqualified himself to hear and determine a divorce cause pending in his court and a special judge is called in *pro tempore* to try it, the functions of the special judge end with the rendition of the judgment; and thereafter the regular judge reassumes the judicial powers of his court to enforce the judgment, and may hear, consider and determine an application of the defeated plaintiff for an allowance of credit on the judgment rendered against him, and may issue an order requiring plaintiff to show cause why he has not paid the alimony awarded by the judgment, and may adjudge the plaintiff guilty of contempt for disobedience of such order.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 10, 1923. Affirmed.

*Thomas E. Wagstaff,* of Independence, for the appellant.
*Jay W. Scovel,* of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The question in this case is whether a district judge who disqualified himself in a certain cause pending in his court and gave way to a judge *pro tempore* who tried and decided it may after judgment reassume and exercise his judicial powers in such case for the purpose of enforcing that judgment and despatching matters incidental thereto.

The plaintiff, George L. Hess, sued his wife for a divorce. She answered with a cross-petition. Plaintiff then applied for a change of venue and urged the disqualification of the regular district judge, supporting his application with an affidavit. The court, the regular judge presiding, granted the application and ordered that a neighboring district judge, Hon. A. T. Ayres of the 13th district, be called to try the cause, and continued it for that purpose. Later, owing to the inability of Judge Ayres to serve, another district judge, Hon. S. C. Brown of the 7th district, was chosen by agreement of the parties.

Judge Brown tried the case and granted the wife a divorce, and gave her some articles of her personal property, $1,100 in cash,

and alimony in the sum of $50 per month, and also an alternative judgment in her favor for half the household goods of the disrupted family or $750 in cash in lieu thereof at her election.

The woman elected to accept $750 in lieu of half the household goods and the plaintiff paid her that sum. Thereafter, however, as alleged by plaintiff, she carried away a considerable amount of the household goods, valued at $350, and plaintiff filed an application that he be allowed a credit of $350 therefor to be applied on the judgment for alimony. When this application was called for hearing, the plaintiff objected to its consideration on the ground that the regular judge had theretofore disqualified himself, and urged that the application should be passed until it could be heard by the judge *pro tempore* who had tried and decided the cause. The court ruled:

"At the time this divorce case was tried as I stated at that time the only reason why I relinquished my jurisdiction to that of another Judge was by reason of the fact of the statement that Mrs. Holdren, a sister-in-law of mine, was to be one of the principal witnesses for the plaintiff or the defendant I forget which. At that time I stated I had no feelings, that I was not prejudiced either in favor of the defendant [plaintiff] or against him. Since that time I have tried lawsuits in which he was party defendant and I believe that he realizes that I have no prejudice against him. None exists. He won the case. Expressed himself to me afterwards as being very much pleased with the way that I handled the matter. I have no prejudice against Mr. Hess and no feeling at all in this matter. But I am interested in seeing that this case is disposed of. This motion has been on file for over a year. According to the pleadings it is [an] application to have an allowance of credit made for certain articles of personal property that the motion claims the defendant took from the premises."

The record then reads:

"Plaintiff refused to present any testimony, or other evidence to support his said motion, and the court being advised in the premises finds that said motion ought to be, and it hereby is overruled."

At the time of these proceedings, there was also pending a motion of defendant for an order requiring plaintiff to show cause why he should not be adjudged guilty of contempt for failure to pay defendant the monthly alimony, he being then in arrears to the amount of $650.

Plaintiff ignored the order, his attorney raising the same objections to the jurisdiction of the regular judge as those advanced against the hearing of the application for an allowance of credit.

"[Counsel for plaintiff]: Well plaintiff's contention is that no order has been legally made. [When] Judge Holdren of this court lost jurisdiction for one purpose in the case he lost jurisdiction for all purposes in the case."

"The Court: I think any order made by any Judge *pro tem* of this court, if that order isn't complied with, brought to the attention of the successor of the Judge who made the order, I think that successor can punish for contempt. Otherwise it would be a farce . . . if you had to have the same judge to compel obedience to the order. It is an order from the court, not an order from the Judge of the court. And it is contempt of the court not a contempt of an order or opinion of some individual comprising the court, the way I look at it."

Judgment holding plaintiff guilty of contempt of court was entered accordingly.

Plaintiff appeals from both rulings.

The ordinary rule is that the powers of a judge *pro tempore* end with the rendition of the judgment in the case in which he was called to serve. (23 Cyc. 611.) Therefore jurisdiction for the enforcement of the judgment and matters incidental thereto necessarily reverted to the regular judge.

In *Kissel v. Lewis*, 27 Ind. App. 302, it was said:

"In the case at bar the contempt complained of was not a contempt of the special judge, nor of any regular judge, but of the Hamilton Circuit Court by whose authority the writ of injunction was issued. . . . If appellant did any act in violation of the injunction it was an offense against the circuit court and not the special judge, and if such act be a contempt it is a contempt of the court and not the special judge. The circuit court at the trial did act through the special judge, but when the special judge rendered the final decree he had exercised the jurisdiction he was called upon to entertain. If jurisdiction is again to be put into exercise it must be done by the court through the then regular acting judge or by some one legally authorized to act as judge. See, *Kirk v. Milwaukee, etc., Co.,* 26 Fed. 501; *Williamson's case,* 26 Pa. St. 9, 67 Am. Dec. 374; *State v. McKinnon,* 8 Ore. 487; Rapalje on Contempts, §§ 8, 13, Hawes, Jurisdiction, § 221; *Taylor v. Moffat,* 2 Blackf, 305." (p. 306.)

Furthermore, it must be kept in mind that disqualification of a judge is not equivalent of a total want of jurisdiction. And there is no intermediate appeal from an adverse ruling on the recusation of a judge. The aggrieved party's objection to the ruling is automatically reserved (*Cobe v. Coughlin,* 83 Kan. 522, syl. ¶ 3, 112 Pac. 115), but the proceeding is not halted; it goes on to its conclusion and judgment; and then the adverse ruling with all its incidents and consequences can be brought up for review.

In *Jones v. Insurance Co.,* 83 Kan. 682, 687, 112 Pac. 826, this court said:

"The conclusion to be drawn from this decision is that when upon an appeal to this court the record of the proceedings shows with reasonable clearness

that the judgment rendered expresses the only result which could rightfully be reached, the defeated party has not been prejudiced in his substantial rights because his motion to change the venue was denied and he was obliged to go to trial before a judge who was disqualified.

"The statute gives no right to an appeal immediately upon the denial of a change of venue. The trial must go on, and not until after final judgment has been rendered does an appeal lie. Shocking as the notion of a trial before an interested, prejudiced or otherwise disqualified judge may be, the law is practical and will not compel another trial merely to gratify a sentiment or to uphold a principle. If the party applying for the change of venue should win the case he is not permitted to say that his substantial rights were prejudicially affected by the erroneous ruling. If the facts should be agreed to and the judgment which the law requires should be pronounced upon them, no possible injury could follow from the refusal to change the venue. Many other situations can be imagined in which a ruling of the kind complained of would be harmless, and if the record should show that the party applying for the change had no defense to a well-proved, meritorious cause of action, it would be to indulge litigiousness at the expense of justice to remand the cause in order that the same adverse result might be stated in another court. Ordinarily, therefore, it is unavailing for a party, on appeal, to stand upon a well-grounded motion for a change of venue. If he brings up nothing but the ruling on his motion and the final judgment against him, the court can not say that prejudicial error is made manifest. It is true that the baneful influence of a biased or otherwise disqualified judge upon the proceedings can not be made to stand out upon a printed record. The embarrassment and constraint under which party and counsel rest in developing their case before one not authorized to hear it is often sufficient to place them at an unfair disadvantage. Therefore the statement that prejudice will be presumed when a change of venue is improperly denied is generally true. But it is true only with this limitation: It must appear from the record that there is a substantial controversy to be determined, the result of which may be detrimentally affected by the officiating of the objectionable judge."

But here plaintiff treated both matters as entirely beyond the jurisdiction of the court merely because of the earlier disqualification of the judge. He offered no testimony to support his application for credit, and he flouted the order to show cause. Therefore, whoever might be the judge, the rulings as made were bound to follow. In this respect we have not the slightest disposition to slacken on minimize the rigid standard of judicial neutrality which justice and propriety exact of magistrates of every degree. This court has said:

"The purpose of the law is that no judge shall hear and determine a case in which he is not wholly free, disinterested, impartial and independent. (*Toothe v. Berkley,* 60 Kan. 446, syl. ¶ 1.)

"Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge." (p. 448.)

Applying this standard of judicial propriety to the matters under review, it would baffle an expert in casuistry to show wherein the regular trial judge offended by the reassumption of his judicial functions. Nobody was wronged; the rulings complained of contained no inherent error traceable to abuse of discretion or otherwise. The judge's disqualification never reached further than to a determination of the question whether the husband or wife were entitled to a divorce, and of the division of their property and of the alimony to be awarded to the wife. All that was in issue at the time of the judge's disqualification had been settled by the judgment entered by the judge *pro tempore*. The taking and conversion of plaintiff's goods could have been the subject of an entirely separate lawsuit, not made supplementary to the divorce case at all, and it was none the less an independent proceeding because it was presented as a matter incidental to the divorce judgment and subsequent to that judgment.

In the matter of the contempt, it should also be noted that no judgment of punishment of any sort was imposed. The trial court merely made a finding of guilty because plaintiff declined to obey the order to show cause. If plaintiff had appeared, prepared to make a showing, he might have asked for a special judge to hear it, based on the same or other substantial showing of interest or prejudice on the part of the judge, as he did in the divorce case itself. But he did nothing at all, and the finding of the court and the ruling thereon was obviously correct.

Affirmed.