No. 19,499.

A. O. SAUNDERS, as Administratrix, etc., *Appellee*, V.
THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY, *Appellant.*

#### SYLLABUS BY THE COURT.

1. RAILROADS—*Train Running between Platform and Standing
Train—Passenger Crossing Intervening Track to Board Stand-
ing Train—Injured—Negligence.* It is not negligence *per se*
for a passenger to fail to stop, look, and listen for an incoming
train, when he must cross an intervening track on his way
from the passenger station to his train, which has been called,
and is standing on its track receiving its passengers.

2. SAME—*Trial—Refusal to Submit More than Ten Questions—
No error.* To justify this court in reversing a judgment on
account of abuse of discretion in arbitrarily refusing to sub-
mit more than ten special questions to a jury, it must appear
that the party complaining was prejudiced by such refusal.

3. SAME—*Special Questions—Answers—Do Not Compel Reversal.*
Some of the answers to the special questions submitted to the
jury in this case may be contrary to the evidence. Any other
answers to these questions in harmony with the evidence would
not contradict the general verdict nor compel a reversal of the
judgment. It is held that these questions and answers are
immaterial, and such answers, even if contrary to the evi-
dence, will not compel a reversal of the judgment.

Appeal from Sedgwick district court, division No. 1;
THOMAS C. WILSON, judge. Opinion filed May 8, 1915.
Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A Scott,*
all of Topeka, for the appellant.

*S. B. Amidon, Jean Madalene, William M. Dedrick,*
and *Harry T. Dedrick,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action by a widow, who is
administratrix, to recover for the death of her husband,
E. A. Saunders. The plaintiff recovered judgment for
$10,000. The defendant appeals.

E. A. Saunders was killed at the Santa Fe depot in Wichita, while crossing the tracks from the depot to take a train on the Wichita and Western, one of the branch lines of that road running out of Wichita. At that time Santa Fe train No. 405 arrived at Wichita from the north at 5:20 p. m. The train on the Wichita and Western left Wichita about five minutes after No. 405 left. The Wichita and Western train, with its engine, was standing on the second track from the passenger depot, waiting for the arrival of train No. 405. A switch engine stood on the third track. There was a crowd of people at the station, waiting for these trains to arrive and depart. In the crowd were newsboys crying their papers. Steam was escaping from the Wichita and Western train. In company with his wife, daughter, and sister-in-law, Saunders came to the station in an automobile at about 5:20 p. m., and got out on the east side of the depot. The railroad tracks were on the west side. Saunders and his party passed into the depot on the way to their train. At that moment the station master called, "All aboard for the Wichita and Western for Garden Plain, Kansas, Kingman, and other points west." The women passed through the depot, went across the first railroad track, and walked south on the platform between the first and second railroad tracks to the Wichita and Western train. Saunders went to the ticket window, purchased one ticket for Garden Plain, the remainder of his party having tickets, and immediately passed out of the depot on the west side, and started toward the Wichita and Western train. No. 405 was coming from the north. Saunders did not see or hear it. It was moving from five to eight miles an hour, and was coming in on the first track. Saunders, while hurrying to get to the Wichita and Western train, stepped upon this first track, six or eight feet ahead of the engine, was struck by the engine, thrown on top of the pilot, off of which he rolled, fell under the wheels, and was so injured that

he soon died. The women of his party had not yet got on the Wichita and Western train. While being taken out from under the train, immediately after being hit, Saunders exclaimed, "For God's sake, I did n't know there was any train coming." When he stepped on the track in front of No. 405, some parties on the platform called out to him, "Look out, you can not make it," and Saunders was immediately hit by the train.

The jury answered certain questions as follows:

"Question 1. Did witness Mahaney,. Depot Master for the defendant, pilot the engine in question across Douglas Avenue by walking ahead of said engine as it came across said avenue to the station? Ans. No.

"Q. 3. Was the bell on the engine in question ringing as the train in question entered the station at Wichita at the time in question? Ans. No.

"Q. 4. What was the speed of the train in question as it passed over Douglas Avenue to the point where Saunders was struck? Ans. From 5 to 8 miles per hour.

"Q. 7. Had said Saunders frequently in past few years traveled on this same W. & W. train 505 when the schedule time of departure of said train 505 and the schedule time of arrival of train 405 were the same as at the time in question, February 5, 1913? Ans. No.

"Q. 9. Was the headlight on the engine in question lighted and burning when the train come into the station? Ans. Yes.

"Q. 11. If you find that negligent handling of the train in question by defendant's employes caused the death of Saunders, then state in what respect such employes were negligent. Ans. Failed to give proper warning of the approaching train.

"Q. 12. How far was the said Saunders from the south end of the pilot of the engine in question when he stepped on the track in front of same? Ans. Six to eight feet.

"Q. 13. If the deceased had looked and listened for an approaching train before he stepped from the depot platform to the railroad track, would he have seen or heard the train in question and avoided the injury that resulted in his death? Ans. No.

"Q. 14. Did the deceased make an effort by the use of his senses to ascertain his surroundings while he

was passing from the depot toward the Wichita and Western train? Ans. Yes.

"Q. 15. If you answer 'yes' to the last above question, state what effort he made, or what he did to ascertain the nature of his surroundings at said time. Ans. Going to his train. Having purchased a ticket and his train having been called he proceeded at once to board his train."

The court refused to submit the following questions, requested by the defendant, to the jury:

"Q. 2. Was the whistle blown on the engine in question about the time it approached Douglas Avenue from the north?

"Q. 5. Just before the engine in question approached the station was Officer Critchfield engaged in directing the people back from the track·on which said engine was approaching?

"Q. 6. How far south of south door of depot was Saunders struck by the engine?

"Q. 8. Was the defendant's train 405 announced at the defendant's depot a little while before its arrival?

"Q. 10. Which of the employes handling the train in question were guilty of negligence causing the injury?"

(1) The first matter complained of is that "The court erred in instructing the jury that as a matter of law the deceased was not guilty of negligence in failing to look and listen for approaching trains before crossing the track."

In *Railway Co. v. McElroy*, 76 Kan. 271, 91 Pac. 785, this court said:

"When a railroad company stops a passenger-train where other tracks are between it and the depot platform, the rights of people having business with such train, and the duty of the company toward them, are the same as if all the intervening space between the depot and the train constituted the platform." (Syl. ¶ 1.)

In that case, this language is found:

"The plaintiff and others rightfully there were under no duty or obligation to anticipate and guard against negligence on the part of the railway company. They had the right to feel secure from injury on account of passing trains. They might rest upon this feeling of

security until warned or notified of danger. The ordinary rule of 'look and listen' has no application to such a situation. When a railroad operates a train under such circumstances it assumes the peril." (p. 274.)

In the McElroy case, a rapidly moving train, running without warning between the depot and the passenger train, caused the injury there complained of. In the case at bar, a regular passenger train, running at five to eight miles an hour, near its regular time of arrival, struck the deceased. He was under no obligation to look and listen before crossing the intervening track. He had the right to assume that he was safe in going to his train. With all this, he could have been guilty of contributory negligence. He could have seen the train, could have known it was coming, and that it was close at hand, and could have deliberately attempted to cross in front of it, thinking he could do so in safety. The question of contributory negligence of the deceased was submitted to the jury, as well as the rule of "look and listen," as follows:

"6. You are further instructed that if the deceased, E. A. Saunders, was guilty of contributory negligence in this case, the plaintiff cannot recover. . . .

"9. You are further instructed to constitute negligence on the part of E. A. Saunders, deceased, it must not only appear that the said deceased failed to use reasonable prudence in the use of his senses, but that such failure contributed directly to the injury received, and hence, though you should find that said deceased did not exercise reasonable diligence at the time and place in question, yet before you can find him guilty of contributory negligence it must further appear from the preponderance of the evidence that such negligence, if any, contributed directly to the injuries received.

"15. You are further instructed that the obligation which rests upon a traveler, to stop, look and listen before crossing a railway track which intersects a highway, does not apply to a passenger in going from the depot to board his train, and this distinction you are authorized to take into consideration in determining

the propriety of the conduct of the deceased, E. A. Saunders, if you find him a passenger at the times in question.

"19. You are further instructed that it was not negligence in and of itself for the plaintiff not to look and listen for approaching trains on defendant's intervening track when he was about to cross the same to get from the station to his train on the west track, if you so find. But, nevertheless, it was incumbent upon him to use such care and attention in crossing said intervening tracks as would ordinarily be expected of persons of ordinary and reasonable prudence under like circumstances, and he had the right to assume that the defendant Company would so regulate its trains that intervening tracks would be free from danger when the passenger train on the west track stopped at the station to receive passengers."

It must not be forgotten that the deceased was injured while attempting to get to his train after it had been called. It can not be said that these instructions, taken together, state the law too strictly against the defendant.

(2) The second complaint is that the court erred in refusing to submit to the jury more than ten special questions. The court submitted ten special questions to the jury, at the request of the defendant. Five more were asked for, but refused. The five refused, if answered favorably to the defendant, would tend to show that the defendant was not guilty of negligence in the operation of train No. 405. Such answers to these questions would not excuse the defendant, because between the station and the passenger train which Saunders desired to take was the railroad track on which he was struck by No. 405; because his train had been called and he was attempting to reach it; and because the bell was not ringing and proper warning of the approaching train was not given. We think where a court is empowered to exercise its discretion in any matter coming before it, it should exercise that discretion, and not adopt an arbitrary rule for all cases

alike, without regard to the particular circumstances of each case. But abuse of discretion alone is not sufficient to justify the reversal of a judgment. It must appear that the party complaining was prejudiced thereby.

(3) The last matter complained of is that the first, seventh, thirteenth, fourteenth and fifteenth findings of fact made by the jury are contrary to the evidence.

The plaintiff contends that these findings are in keeping with the evidence; and calls attention to the evidence and inferences to be drawn therefrom that support the answers to questions one, seven, thirteen and fourteen, and states that she objected to question fifteen being submitted to the jury.

The jury say that if the deceased had looked and listened for the approaching train before he stepped from the depot platform to the railroad track he would not have seen or heard the train in question, and would not have avoided the injury that resulted in his death. The jury also say that he made an effort by the use of his senses to ascertain his surroundings while he was passing from the depot to the train. It seems that if he had looked he could have seen the engine, and that if he had listened he could have heard it. Another finding of the jury is that the effort made by Saunders was, "Going to his train. Having purchased a ticket and his train having been called he proceeded at once to board his train." However inaccurate the answers to these questions may be, those inaccuracies can not avail the defendant. When it is necessary for a passenger to cross a railway track on his way from the depot to his train, after his train has been called, it is the duty of the railway company, in the absence of contributory negligence on the part of the passenger, to see that he is not injured by any other train moving along the track over which he must pass. In the case at bar, the jury, by its general verdict, found that the deceased was not guilty of contributory negligence.

The plaintiff alleges negligence in inviting the deceased upon and over the main track and across the platform in front of the said engine at the time of deceased's injury. This must have been submitted to the jury in the instructions, as one of the issues of the case. When the defendant called "All aboard for the Wichita and Western for Garden Plain, Kansas, Kingman, and other points west," it gave an invitation to the deceased to then cross the intervening track and get on his train. While attempting to do this he was injured. This invitation goes to the heart of the plaintiff's right to recover, and of the defendant's liability, and renders the findings complained of immaterial.

The answer to the complaint concerning the thirteenth and fourteenth findings is, that it was not contributory negligence *per se* for the deceased to fail to look and listen. Suppose the jury had answered the thirteenth question "Yes," and the fourteenth, "No." What difference would it make in the present situation? The deceased's failure to look and listen was not necessarily contributory negligence on his part. Unless such failure constituted contributory negligence, the supposed answers to these questions would not benefit the defendant. It makes no difference how these questions are answered, the result will be the same.

We can not say that these answers show such bias and prejudice as justifies this court in reversing the judgment.

The judgment is affirmed.