No. 19,675.

WILLIAM STUCKEY, *Appellee*, v. ROBERT J. DUNHAM and FORD F. HARVEY, as Receivers of the Metropolitan Street Railway Company, *Appellants*.

SYLLABUS BY THE COURT.

1. ALIGHTING FROM STREET CAR—*Personal Injuries—Contributory Negligence Question for Jury.* Upon the facts stated in the opinion it is held that the plaintiff was not as a matter of law guilty of contributory negligence in failing to look for a car passing on an adjoining track at the time he alighted from the car upon which he was a passenger.

2. SAME—*Exemplary Damages—Justified by the Evidence.* The act of a motorman in running a street car at a speed of ten to fifteen miles an hour past a car on a parallel track that had stopped to discharge passengers, and thereby causing injuries to plaintiff, who was a passenger alighting from the other car, is held to justify a finding of wanton conduct such as to authorize exemplary damages.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed October 9, 1915. Affirmed.

*O. L. Miller,* and *C. A. Miller,* both of Kansas City, for the appellants.

*J. O. Emerson,* and *David J. Smith,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff recovered a judgment against the street railway company for injuries received while a passenger. The defendant appeals.

The accident to the plaintiff occurred at Thirteenth street and Troup avenue, Kansas City. Defendant operates a double track on Thirteenth street, running north and south. The north-bound cars used the east track, and the south-bound the west track. Plaintiff, who at the time of the accident was sixty-five years of age, with good hearing and eyesight, was a passenger upon a north-bound car about ten o'clock at night. When the car was one block south of Troup avenue he went to the front vestibule, where he stood at the left of the motorman until the car approached the stopping place at the south line of Troup avenue. He stood facing the north, and had an unobstructed view through the windows of the vestibule. As the car stopped plaintiff got down from the steps on the west side of the vestibule, and had taken about two steps toward the west track when he was struck by a car passing from the north, and was seriously injured. His testimony is that when he was in the aisle of the car moving to the front he looked forward but did not see the approaching car; that he was familiar with the position of the tracks and the operation of the cars, and knew there was danger in getting off at that side; that he does not know how close the south-bound car was when he stepped down to the ground. He said that he looked for anything that might endanger him, but that he did not look for any car; that the motorman of the car he was leaving said: "Look out for the car," but that the passing car was right upon him at the time this was said. Some of the passengers who got off at the same place left the car at the rear and at the east steps. The evidence shows, however, that the defendant discharged

passengers at the front vestibule, and that the printed trans-
fers issued by defendant directed passengers to leave cars by
the front door. It is also shown that the rules of the company
required a motorman of a car passing other cars about to
stop for the discharge of passengers, to slow down, sound the
gong, and bring his car under control, and that before passing
a car already stopped for the discharge of passengers he must
sound the gong and bring his car to a stop.

It was the contention of the defendant at the trial that plain-
tiff was guilty of contributory negligence in failing to look and
see the approaching car while he was on the front vestibule
and before he stepped down and toward the south-bound
track. It was undisputed that both cars were lighted and that
the approaching car could have been seen by plaintiff had he
looked before he stepped off. The motorman of the north-
bound car testified that the fenders of the two cars were about
together when the plaintiff got off. The motorman of the
south-bound car testified that he thought the north-bound car
had not stopped when he passed it and that it would not stop
before his car had passed. A special finding of the jury, how-
ever, is that the car upon which the plaintiff was riding had
stopped when the south-bound car passed it. The findings also
are that plaintiff knew that south-bound cars were being
operated on the other track and that from his position on the
front platform or steps of the north-bound car he could have
seen the south-bound car approaching before he attempted to
alight, had he looked for it. To the question inquiring what
distance north he could have seen the approaching car had he
looked, they answer: "We do not know." It was shown that
the tracks are straight for a distance of two blocks north of
Troup avenue, that from the north line of Troup the grade
descends 4.8 per cent for the first fifty feet, and then drops to
7 per cent for 500 feet. Troup avenue is 50 feet wide and
practically level. The jury found that the south-bound car had
a headlight and inside lights. There was a conflict in the evi-
dence with reference to the speed of the south-bound car. One
witness for plaintiff estimated it at from ten to fifteen miles per
hour; another witness said it was running about twelve miles
an hour when he first saw it. Other witnesses said it was go-
ing fast. The car had just come up a steep grade extending for
two blocks. The motorman, a witness for defendant, said he

thought the speed was from five to six miles an hour. De-
fendant insists that the weight of the evidence shows that the
north-bound car had not come to a stop when plaintiff got off
and at the time the south-bound car passed, but concedes it is
bound by the finding to the contrary.

As to the claim of contributory negligence, the jury have
found in favor of the plaintiff, and we can not say that his fail-
ure to look for a car from the north while he was on the steps
was, in the circumstances of the case, contributory negligence.
The company invited the use of this door for the discharge of
passengers. It used the space between the tracks as a suitable
place for passengers to alight. The situation is in some re-
spects analogous to that presented in the recent case of *Saun-
ders v. Railway Co.,* 95 Kan. 537, 148 Pac. 657. There, a
passenger just after purchasing his ticket heard his train an-
nounced. In order to reach it he had to cross a track, which
he did hurriedly, without looking, and was killed by a train
pulling into the station. If he had stopped and looked he
would have seen the train in time to avoid it. It was held that
in those circumstances he was not as a matter of law guilty of
contributory negligence. An instruction was approved which
charged that it was not negligence in and of itself for him not
to look and listen for approaching trains on the intervening
track when crossing to get from the station to his train, but
that it was incumbent upon him to use such care and attention
in crossing the intervening track as would be expected of per-
sons of ordinary and reasonable prudence under similar cir-
cumstances, and that he had the right to assume that the rail-
way company would so regulate its trains that intervening
tracks would be free from danger when one train stopped at
the station to receive passengers. The fact that other pas-
engers left the car by the rear and on the side away from the
parallel track, and that plaintiff in the present case might have
chosen a safer way, does not affect the matter, since the com-
pany by its custom, rules and notices invited and directed pas-
sengers to leave cars by the front exit.

A more serious question is raised by the contention that
there is no evidence to warrant the allowance of exemplary
damages, and that it was error for the court to submit that
question to the jury. At the first trial the jury disagreed. On

Stuckey v. Dunham.

a second trial the jury awarded plaintiff $1200 actual and $1000 exemplary damages. The extent of the plaintiff's injuries would have warranted a judgment for actual damages exceeding even the aggregate sum awarded him. His foot was crushed, necessitating amputation of the leg above the knee. The petition does not allege as grounds of negligence the fact that defendant invited or directed passengers to get off at the front end of the car, or that it was negligent in using the space between the tracks as a place for passengers to alight. Of course he can not recover upon acts of negligence not alleged. They were shown, presumably, for the purpose of disproving contributory negligence, and were proper facts for the jury to consider in determining that question. It is alleged that the car was run at a dangerously high rate of speed just before it struck plaintiff, "to wit, at the rate of 25 miles per hour." The highest speed any witness for plaintiff testified to was 10 or 15 miles; the next highest estimate was 12 miles. Other witnesses for plaintiff who were on the south-bound car said it came up the 7 per cent grade, which extends for about two blocks, as fast as cars usually climb such grades with the power "all turned on." After reaching the top of the hill the car had traveled about the width of Troup avenue, which is 50 feet. The proof failed to show such a reckless or wanton rate of speed as would ordinarily and of itself justify the allowance of punitive damages, but in the circumstances disclosed by the evidence we think the verdict and judgment should not be disturbed. To run a car at such a speed past another car which had stopped to discharge passengers and without sounding a gong or giving any signal to warn such passengers of the danger was wanton and reckless negligence. It violated a positive rule of the company; it placed the lives and limbs of the passengers alighting from the other car in great danger, and as is well known, the practice often occasions serious accidents. Cities are adopting ordinances making it unlawful for autos to pass street cars which have stopped to discharge passengers because of the frequency with which similar accidents result.

It is true, there was a conflict in the evidence as to whether the gong was sounded, but the jury resolved that in favor of the plaintiff.

The judgment is affirmed.