No. 20,723.

LEO FRED WYRICK, a Minor, etc., *Appellee*, v. THE PARSONS RAILWAY & LIGHT COMPANY, revived in the name of THE PARSONS ELECTRIC UTILITIES COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Injuries to Child—Negligence of Motorman—Evidence—Findings.* The plaintiff, a child about twenty months old, who was traveling diagonally across the intersection of two streets on one of which a street railroad was operated, was struck and injured by a street car. In the action to recover damages for the injury the principal controversy was whether the motorman could or should have seen the child and its peril in time to have stopped the car and avoided the injury, and it is held that the evidence sustained the finding and verdict to the effect that the motorman failed to exercise reasonable care for the protection of the child.

2. SAME—*Court May Instruct Upon Any Issue Properly Raised Which the Evidence Tends to Support.* It is competent for a court to give. instructions upon any issue or theory of a party which is within the pleadings and which the evidence fairly tends to support, although the evidence may not be direct or strong and might be deemed to be inadequate by the court if it had been the trier of the fact, and it is herein held that there was evidence in this case to justify the court in giving an instruction upon the theory of the plaintiff herein, the question of whether the theory was proven being left to the determination of the jury.

3. SAME—*When the Setting Aside of a Special Finding Requires a Reversal.* If a verdict rests in part upon a special finding which is set aside for lack of support in the evidence a new trial should be granted, but if the finding set aside is not essential to the support of the verdict, and the remaining findings and the evidence sustain the verdict, the setting aside of the findings does not require the setting aside of the verdict nor the granting of a new trial.

4. SAME—*Finding Supported by Evidence.* Another special finding as to the negligence of the motorman is challenged on the ground of a lack of evidence, but. it is held to have sufficient support.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed March 10, 1917. Affirmed.

*W. S. Hyatt,* and *E. L. Burton,* both of Parsons, for the appellant.

*W. D. Atkinson,* of Parsons, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Action by Leo Fred Wyrick, a minor, against the Parsons Railway & Light Company to recover damages for personal injuries. Verdict for $12,000 was returned in favor of plaintiff on November 20, 1915, and judgment rendered thereon February 19, 1916. The Parsons Railway & Light Company was dissolved on December 31, 1915, and the Kansas Electric Utilities Company became its successor. The court had the judgment of February 19, 1916, expunged, and in place thereof had judgment entered against the Parsons Railway Company as of November 20, 1915, and this judgment was then revived against the Kansas Electric Utilities Company, which appeals.

The plaintiff, a child about twenty months old, was run over by a street car of the defendant at the intersection of Lincoln

and Kennedy avenues in the city of Parsons. Lincoln avenue, down the center of which the track runs, is a north-and-south street, and Kennedy avenue runs east and west. Each of these streets is thirty-seven feet wide between the curbings, and seventy feet between the lot lines. There is a slight down grade in the track northward, at and south of the place of the accident. It appears from the motorman's testimony that as his car approached Kennedy avenue from the south he had the current shut off and the brakes applied in order to allow a passenger to alight at the south crossing of Kennedy avenue; that when the car was a short distance from the crossing, and when its speed was about six or seven miles an hour, the passenger jumped off the car, and that the brakes were then released so that the car would gain momentum. He further testified that as his car came down Lincoln avenue his attention was directed toward the front; that he glanced back at the passenger who was getting off, according to his custom, to see if he alighted safely; that he looked at the crossing at the right, then in front and then toward some children playing in a yard on the left, and then looked forward and for the first time saw plaintiff, who then was four or five feet from the track, and moving diagonally toward it; and that he stopped the car within about eighteen or twenty feet after he first saw the plaintiff. The home of the plaintiff's parents is at the northeast corner of the intersection, and the house stands back from each street about eighteen or twenty feet. Shortly before the accident the plaintiff had been in the house with his mother, and he was not seen again by any of the witnesses until he was in the street near the track just before he was struck, which was about three minutes from the time when he was with his mother. It appears that the child after leaving the curb continued his course without hesitating, as the witnesses who saw him in the street just before he was struck, when he was from five to seven feet from the rail, stated that he was then moving toward the track.

Special findings were made by the jury to the effect that the view of the motorman was unobstructed for a distance of 900 feet as he approached Kennedy avenue; that he slackened the speed of the car near Kennedy avenue to six or seven miles an hour; that a passenger alighted on the south side of

the avenue while the car was still running; that the motorman looked toward the passenger while he was alighting; that his attention was not directed toward other objects at the side nor from directly in front of the car after the passenger alighted; that after observing the passenger alight, and some children west of the street, he then looked north for the first time and saw the child who was then about five feet from the railway track; that he was then but twenty feet from the child, and from that time exercised every reasonable precaution to stop the car; and further, that if he had been looking ahead and had been exercising ordinary care he could have seen the child and stopped the car before it struck him.

There was a complaint of an answer by the mother of the child as to how far she could see a street car approaching, looking from the door of her house. The objection was that the question called for a conclusion. Instead of merely answering "Yes" she stated that she could see cars at Gabriel avenue. The defendant did not ask to have the answer stricken out, and in view of other testimony in the case no prejudice could have arisen as to this answer. Only prejudicial errors afford grounds for reversal.

Complaint is made of instruction No. 14 given to the jury. The objection is that the court assumed that evidence had been introduced that the child had passed over the parking and continued to travel toward the track without stopping. The jury were told in effect that if the child was seen on the sidewalk or parking, the motorman had a right to assume that it was simply playing there and would not go upon the track unless he was moving toward the track and continued his course without stopping until he reached the track; and further, that if he did see the child, or in the exercise of reasonable care could have seen him, leaving the park and going upon the street and proceeding in his course toward the track until the same was reached and the injury sustained, and if after seeing the child going in the direction of the track diagonally across the square, or in the exercise of reasonable care he could have seen him going toward the track after reaching the street; and further, if at that time the motorman in the exercise of care in applying the brakes or reversing the power could have stopped the car and avoided the accident and failed

to do so, the defendant was guilty of negligence. The court, in this instruction, does not assume that the child continued to travel uninterruptedly toward the street from the time of starting, nor assume either the length of time that he occupied in going toward the railway track, or any other contested fact. These facts depended upon the testimony of witnesses and the inferences to be drawn from their testimony and other proven facts, but what facts were established by the proof was left entirely to the jury. It is competent for the court to give instructions on any issue or theory of a party which the evidence tends to support.

In *Haines v. Goodlander*, 73 Kan. 183, 84 Pac. 986, it was said:

"The court should present the theories of the respective parties, and in doing so may refer to the lines of evidence introduced by the parties and upon which each relies, carefully refraining from expressing an opinion as to what the facts do or do not prove and from giving any intimation from which the opinion of the court might be inferred. Instead of stating abstract principles of law, the court should aid the jury by making a concrete application of the law to the facts in issue which there is evidence to support." (p. 190.)

Here there was testimony which warranted the court in submitting the theory of the plaintiff that the child, after starting, proceeded along the course without stopping and must have been in the view of the motorman some time before the car collided with him. The court did not trench upon the province of the jury, but stated that if certain facts were proven certain rules of law would apply. The court may not instruct upon a hypothesis where there is no evidence tending to support it, but in this case there was testimony tending to establish the theory of the plaintiff, and whether the theory was proven and the fact existed was left to the decision of the jury. In other instructions the court stated the duties of a motorman to keep a lookout for persons, and especially children, that might be on or in dangerous proximity to the track and left the disputed questions for the determination of the jury. Testimony was given as to when the child was last seen in the house, the distance from the house to the street and from there to the tracks. The mother testified that after nursing and releasing the child she attended to duties that would occupy a period of about three minutes, after which

Wyrick v. Street Railway Co.

she discovered that he was in the street and had been run over, and it is the theory of the plaintiff that during that period the child unhooked the screen door, made his way down the steps to the ground, then to Kennedy avenue and then diagonally across the park and street to the place of the accident. In addition to the mother's testimony a neighbor who saw the child after he left the curb stated that he was then about five feet from the rail and that "he did not stop, just toddled right along." Another witness, who was driving a truck about 150 feet behind the street car, said he saw the child on the north crossing shortly after the man got off the car, which would be about seventy feet away; that the child was then half way between the curb and the street car, and that "it was running across the street, trotting along like a child of that age, did not hesitate to my knowledge." The motorman said that he saw the boy when he was five feet from the track and that "it was running toward the car and diagonally across the street to where these other children were 'I suppose." Upon this evidence the court was warranted in submitting the plaintiff's theory of the case, that the child had continued its course from the time it left the home until it reached the railway tracks.

The principal contention on this appeal is that the court erred in not setting aside the answer given by the jury to question No. 8. The answer to question No. 7 was set aside on the motion of the defendant, and it is contended that the striking out of that answer left no basis for the eighth finding of fact. These questions and answers are as follow:

"Q. 7. What distance south of the intersection of Lincoln Avenue and Kennedy Avenue, do you find from the evidence, the motorman of car No. 108 on October 10, 1914, had he been looking ahead, could have seen plaintiff between the curb and the east rail, as said car approached the intersection of said streets? Answer. 300 feet.

"Q. 8. Do you find from the evidence, that on October 10, 1914, the motorman of defendant's car No. 108 in the exercise of ordinary care, could have seen and stopped said car before it struck plaintiff? Answer. Yes."

If the finding set aside inheres in the verdict or nullifies other special findings upon which the verdict is based there is ground for defendant's contention. (*Goff v. Goff*, 98 Kan. 201, 158 Pac. 26.) We think the verdict was not based upon the seventh

finding and that the remaining findings are sufficient to sustain the judgment that was rendered. Several objections were made to the finding but it was set aside on the single ground that it was not supported by the evidence. One of the grounds of attack on the finding was that it was made under the influence of passion and prejudice. The ruling of the court setting the finding aside upon the specific ground was in effect a denial of the other grounds alleged, and a holding that the jury were not actuated by passion and prejudice in making the finding. Manifestly the court was of opinion that the evidence did not sustain the answer that the motorman, if he had been looking, could have seen the child for a distance of 300 feet between the curb and the rail as he approached the intersection. The answer depended upon the speed at which the car was running during the period the child was walking from the curb to the track. It also involved the time when the child left the curb, the angle at which he traveled toward the track and the speed at which he was moving. According to the testimony the street car was moving at varying rates of speed as it approached the place of collision. The motorman testified that between Gabriel avenue and Kennedy avenue the car was moving about twelve or thirteen miles an hour, that it had slowed down to about six miles an hour when it was about fifteen feet south of Kennedy avenue, and was going about nine miles an hour after the brake was released and when it crossed the sidewalk on the south side of that avenue, and, of course, was going at a slower speed immediately before the collision occurred. Taking into consideration the testimony of the pace at which the child was moving from the curb to the rail and the different speeds at which the car was moving as it approached the place of collision, the court decided that the evidence did not support the finding that the motorneer could have seen the child a distance of 300 feet. The ruling does not imply, however, that he might not have seen him 200 feet or some less distance away, nor that he could not have seen him in time to have stopped the car and avoided the accident if he had been exercising reasonable care in keeping a lookout ahead. Apparently the court made a computation of the relative speeds at which the car and the child were moving and determined that the distance named by the jury was too great. The court, however, did sustain a finding that the motorneer could have

Wyrick v. Street Railway Co.

seen the child a sufficient distance away to have stopped the
car before it struck the child if he had been exercising ordinary
care.   The view was unobstructed, the day was clear, and the
motorneer, if he had been looking, had an opportunity to see
the child as he moved from the curb to the rail.   If the testi-
mony was that he could have seen the child as he approached
for 200 feet or 100 feet or fifty feet or even a less distance, it
was the duty of the court to have set aside the finding, but after
doing so the other findings would still be consistent with the
verdict and sufficient to uphold it.   When the motorman saw the
child he was able to stop the car in a distance of eighteen or
twenty feet and he testified that six inches less would have
prevented the accident.   He also testified that "If I had seen
the child quicker, I could have saved the child, just a small
fraction of a minute or second would have done it."   One of
the witnesses, who was with a group of children playing near
a bonfire (where the plaintiff was evidently intending to go),
testified that she saw the peril of the child as the car ap-
proached and ran screaming, trying to attract the attention of
the motorman.   At first he was going slowly and she thought
he was going to stop the car before striking the child, but then
the car appeared to lunge forward and to go much faster when
it was within a short distance from the child (estimated by
her to be ten feet).   The jury concluded that the motorman
was not exercising due care and that he could have saved the
child in ample time if he had been keeping such a lookout as
the law requires.   The fact that finding No. 7 was contrary to
the evidence and that it was eliminated by the court does not
overthrow other findings which were consistent with the verdict
and sufficiently supported by the evidence, nor the verdict it-
self.   (*Saunders v. Railway Co.*, 95 Kan. 537, 148 Pac. 657.)

There is a further contention that the finding to the effect
that the motorman's attention was not attracted to other ob-
jects at the side of the street nor from directly in front of his
car after the passenger alighted is not supported by the evi-
dence.   He did testify that he was looking directly forward
after the passenger alighted, and as the car was moving across
the intersection of the street, but although not so direct as his,
there was testimony and some circumstances which tended to
show the contrary and to uphold the finding made by the jury.

Evidently the jury did not credit his testimony on this phase of the case and, as has been determined—

"A court or jury is not required to believe a witness or accept his statements as conclusive merely because there is no direct evidence contradicting his statements." (*Cobe v. Coughlin*, 83 Kan. 522, syl. ¶ 2, 112 Pac. 115.)

We find no substantial error in the proceedings and therefore the judgment of the district court is affirmed.