IRA M. COBE, *Appellant,* v. THE COUGHLIN HARDWARE COMPANY, *Appellee.*

No. 16,718.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Judgment.* Ordinarily a judgment on the pleadings in favor of the plaintiff can not be ordered in a case where issue is joined upon a general denial and other defenses, unless the general denial is overthrown by other statements in the answer.

2. EVIDENCE—*Weight and Credibility—Testimony Not Directly Contradicted.* A court or jury is not required to believe a witness or accept his statements as conclusive merely because there is no direct evidence contradicting his statements.

3. PRACTICE, SUPREME COURT—*Right to Review—Exceptions to Rulings.* The code of 1909 dispenses with the necessity of taking or saving exceptions to rulings of the trial court. A party is now entitled to have all rulings, including the giving and refusal of instructions, reviewed on appeal without notifying the court that he intends to have the ruling reviewed or preserving an exception to the ruling.

4. INSTRUCTONS—*Issue Raised and Abandoned.* Ordinarily a court is not warranted in submitting to a jury by instructions an issue raised by a pleading which is abandoned by the party pleading it, and in support of which no testimony is presented.

5. BANKS—*Authority of Officers—Use of Funds to Pay Individual Debts.* Neither the cashier of a national bank nor a member of the discount board who owns a majority of the stock, nor the two conspiring together, can by any device or fraud give away the funds of the bank nor use them to pay the individual debts of either.

6. ——— *Liability of One Receiving Funds of Bank, without Consideration, in Payment of Officer's Debt.* If these officers connive together to pay the debt of the stockholder to his

creditor by the entry of credits in the books of the bank in favor of such creditor, based on fictitious notes, and the amount of the credits is checked out by the creditor without anyone having made a deposit in the bank to justify the entry of the credits and without the sanction of the board of directors, the creditor who drew out the money without giving any consideration therefor is liable to the bank for the money so drawn and received by him, although he may have had no knowledge of the fraud of the officers.

Appeal from Shawnee district court. Opinion filed December 10, 1910. Reversed.

*Mulvane & Gault,* and *D. R. Hite,* for the appellant.

*Charles Blood Smith, R. F. Hayden, George P. Hayden,* and *Samuel Barnum,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Ira M. Cobe, as assignee of the receiver of the insolvent First National Bank of Topeka, against the Coughlin Hardware Company, to recover $4000 alleged to have been due the bank for money obtained from it by the hardware company. It was alleged and shown that on May 20, 1905, the books of the bank disclosed that the Coughlin Hardware Company had overdrawn its account to the amount of $1344.18, and that upon that date a demand note for $1500, payable to the bank and signed "Coughlin Hdw. Co., by Chas. J. Devlin," was given to the bank, and the amount of the note was credited to the account of the hardware company. Three days later the books of the bank showed that the hardware company had again overdrawn its account, and a similar note, dated May 24, 1905, for $2500 and payable to the bank, was executed, and it also was signed "Coughlin Hdw. Co., by Chas. J. Devlin." The credits received on these notes, amounting to $4000, were entered upon the deposit book of the hardware company as of the dates the notes were given, and the hardware company from time to time checked against

such account and the credits given by reason of such notes until the full amount of $4000 was checked out. In addition to the foregoing facts, Cobe alleged that although the hardware company had received the $4000 from the bank and had become indebted to the bank and the assignee in that amount, it had failed to pay the same upon demand, and for this amount, with interest, the assignee, Cobe, asked judgment.

The hardware company answered with a general denial, and alleged that C. J. Devlin owned a majority of the stock of the bank and was a director who largely controlled its affairs; that he owned and controlled certain coal companies which were indebted to the hardware company; that he agreed to pay on this indebtedness $4000; and that the credits in the bank of $1500 and $2500 were made in compliance with this agreement. It also alleged that if any loan was made or discount extended by virtue of the notes it was made to Devlin himself, and that the bank knew that the notes had not been executed by the hardware company. It further alleged that it had no notice that Devlin had executed the notes until the bank had become a bankrupt. The answer contained a verified denial of the execution of the notes and the right of Devlin to execute them.

In the reply Cobe denied generally, and also made specific denials of certain averments of the answer. He also alleged that the hardware company presented its claim of indebtedness against the coal company mentioned in a bankruptcy proceeding, but did not credit that company with the 1500-dollar and 2500-dollar payments referred to in the answer.

At the trial the cashier of the bank testified on behalf of Cobe that Devlin owned a majority of the stock, was a member of the discount board, and to a great extent controlled the affairs of the bank. He testified to the overdrafts of the hardware company, and that Devlin came in and handed him the notes, which were dis-

Cobe v. Coughlin.

counted, and that on his direction the amounts of the notes were credited to the account of the hardware company. He also testified that he recognized that the signature on the notes was not the one usually attached to the paper of the company, but that he understood Devlin to be a partner or stockholder in the hardware company, and he therefore assumed that the notes were the paper of the company and he accepted them in payment of the overdrafts and passed the amounts to the credit of the company. In addition to the testimony of the cashier, the evidence consisted of the notes, slips and book entries of the bank. No testimony whatever was offered in behalf of the hardware company, and the trial court, after denying a motion for judgment on the pleadings and one to instruct a verdict for Cobe, submitted the case to the jury on instructions, of which there is complaint, and the jury later returned a verdict for the hardware company.

It is first argued that the court erred in denying the motion by appellant for judgment on the pleadings, but as the answer of appellee set up a general denial as its defense to the cause of action stated in the petition the motion could not well be sustained. The appellant did not demur to the answer or any of the defenses alleged in it. It is plausibly argued that the second count of the answer did not state a defense to the action, but if a demurrer had been sustained to that count the denials would have remained, which of themselves are sufficient.

The next contention is that the court should have directed a verdict for appellant. It is true that no testimony was offered in behalf of appellee, but a court or jury is not required to accept a statement of a witness as conclusive, although there may be no direct evidence contradicting his statements, and hence the court could not direct the verdict. (*Railway Co. v. Geiser*, 68 Kan. 281; *Jevons v. Railroad Co.*, 70 Kan. 491.)

There is complaint, and reason to complain, of the

instructions upon which the case was submitted to the jury. The appellee insists that as the record and abstract fail to show that any exceptions were taken to the instructions of the court they are therefore not open to review. The provisions of the old code extending from section 299 to and including section 305a (Gen. Stat. 1901, §§ 4746-4753), relating to the taking of exceptions, are wholly omitted from the code of 1909. Under the old code error of law occurring at the trial was a ground for a new trial, but was not available unless "excepted to by the party making the application" (§ 306, subdiv. 8, Gen. Stat. 1901, § 4754, subdiv. 8), while in the code of 1909 this reference to an exception is omitted and an aggrieved party whose substantial rights are affected may now have a new trial for "erroneous rulings or instructions of the court" without the formality of an exception. (Code 1909, § 305, subdiv. 2.) Of course, a party can not obtain a reversal of a judgment because of an instruction which he induced the court to give nor for an erroneous ruling which he invited the court to make. By striking from the code all of the provisions relating to exceptions the legislature manifestly intended to dispense with the taking of exceptions, which in actual practice had largely become a mere formality. It is no longer necessary for a party to notify the trial court that he intends to have a ruling reviewed on appeal or to have an objection saved by a record entry. (*Kelly v. Schreiber*, 82 Kan. 403.)

After calling the attention of the jury to the contention of appellant and stating that appellee had formed an issue by a general denial and by the special denial challenging the authority of Devlin to execute the notes, the court presented in some detail the claims of appellee on its second defense, upon which no evidence had been offered. The appellee, as we have seen, did set up that Devlin owed it, that he had agreed to pay money into the bank for it, that the credits extended because of the

notes executed for the appellee by Devlin were in compliance with this agreement, and, further, that the execution of the notes without authority was a shift and device of Devlin, in connivance with the cashier, to raise $4000 to pay on his indebtedness to appellee and was in fact a loan from the bank to Devlin; but this defense appears to have been abandoned by appellee, as no proof of these averments was offered. The submission of these questions to the jury, without evidence, was unwarranted and quite likely to have been prejudicial.

Aside from that, the defense itself is defective. Neither the cashier nor a stockholder of a bank can by any device or fraud give away its funds, nor can they use them to pay their individual debts to anyone. The appellee had overdrawn its account with the bank and was indebted to it. Assuming, as we may, that Devlin was without authority to execute the notes and that they were worthless, the bank never received anything from appellee on its debt nor for the $4000 drawn out of the bank by it. The appellee obtained this sum from the bank on its checks over and above its deposits, for which no consideration was paid to the bank. The funds of the bank could not be diverted or appropriated to the individual debts of Devlin or the cashier by the mere agreement between Devlin and the appellee to enter a credit in its favor. The appellee had paid nothing to the bank, and the bank had received nothing to warrant such a credit. If something had been received by the bank or something had been accepted by the governing board as a basis for the credit, other considerations and liabilities might arise.

The case of *Hier v. Miller*, 68 Kan. 258, illustrates the effect of entering a credit in a bank book by a cashier and allowing the amount of it to be drawn out in payment of the cashier's debt, when there was in fact no deposit, and also where the creditor was entirely innocent of the misappropriation. There the

cashier was indebted individually to a depositor of the bank. He pretended to make several deposits in favor of the creditor, as payments on that debt, and entered credits of the amounts upon her pass book. A final settlement was had between them, and in consideration of the credits thus extended the note representing the debt of the cashier was surrendered, and for a balance that was still due her a cashier's draft on another bank was drawn. No money was deposited in the bank when the credits were entered, and no other officer of the bank knew of the transaction, but the creditor acted in good faith throughout the transaction and knew nothing of the fraudulent diversion of the funds. It was held that the cashier could not pay his debt in that manner and that the receiver of the bank, which in the meantime had become insolvent, could recover from the innocent creditor the amount of the bank's money which she had checked out on the faith of the fraudulent entries of credit. In referring to the entries of credit in the creditor's pass book it was said:

"Those entries were made in payment of the cashier's private debt, and, if of any effect at all, amounted to an appropriation of the money of the bank to the discharge of his personal obligations. The cashier had a right to dispose of the funds of the bank for purposes contemplated by its charter. For this his office is a warrant of authority. But he could not absorb the funds of the bank in the satisfaction of his private debts without an express and especial authorization." (p. 260.)

On the question whether the creditor could rely on the apparent authority of the bank officer when he undertook to extend a credit in the payment of his debt it was said:

"Whether or not such authority actually did exist the defendant was bound to inquire. It has been well understood from of old that no man can serve two masters. He will hold either to one or to the other. For a like reason the cashier could not serve both him-

Cobe v. Coughlin.

self and the bank in a single transaction, and because he was attempting such a perilous thing the defendant was put upon guard as to the extent of his power." (p. 260.)

On the same line it was further said:

"The cashier of a bank may not pledge the credit of the corporation or use the corporate assets for the satisfaction of his individual indebtedness, without the consent of the board of directors. That is a use foreign to the charter purposes of the corporation; and because such conduct falls outside the scope of a cashier's lawful authority anyone dealing with him privately must do so at his peril."   (p. 266.)

Devlin and the cashier acting in connivance with Devlin could no more appropriate the funds of the bank to pay the individual debts of Devlin, without the sanction of the board of directors, than could the cashier of the bank in the cited case; and it was incumbent on the appellee, as it was upon the creditor in that case, to inquire whether the officers of the bank were acting within the scope of their authority. If appellee intrusted Devlin to make a deposit or procure a credit for it in the bank, it devolved upon it to see that the deposit was actually made or that a real credit was obtained. The fact that Devlin was a member of the discount board and owned a majority of the stock did not give validity to the action of the cashier nor relieve appellee from responsibility for the funds which were obtained from the bank, if, as alleged, the cashier and Devlin connived together to obtain $4000 of the bank's money with which to pay Devlin's debt.

In *Dowd v. Stephenson*, 105 N. C. 467, a president of a bank, who was indebted to another, instructed the cashier to pay the checks of his creditor out of the funds of the bank. This was done for the president's convenience. The creditor's account was overdrawn, but the checks were honored by the cashier on the instructions of the president, who appeared to be in-

34—83 KAN.

debted to the creditor more than the amount of the overdraft. The cashier stated that he honored these checks and looked to the president to pay them. No notice was sent to the creditor of his overdrafts, but the checks were charged on the books of the bank to the creditor. It was decided that "in the absence of special authority for such purpose neither its president nor its cashier, nor these officers acting conjointly, had authority or right to appropriate and devote any part of the funds of the bank of which the plaintiff is receiver to the payment of such president's personal debt due to the defendant. Such authority, ordinarily, was beyond the scope of the purpose and duties of such officers. No doubt the directors—the governing authority of the bank—might allow them to exercise such power, or they might ratify such transaction, but it must in some way sufficiently appear that they did." (p. 470.)

(See, also, *National Bank v. Drake,* 29 Kan. 311; *Cattle Co. v. Loan Co.,* 65 Kan. 359.)

Other considerations would arise where there was some authorization or ratification of the acts of the officers by the board of directors, or where there were facts that would estop the bank to deny the authority of the officers, but as there was no proof supporting these theories there is no occasion to discuss them.

The instructions of the court did not conform with these views, and, besides, there was no basis in the evidence for some of the instructions that were given; and for the error of the court in charging the jury the case is reversed and the cause remanded for a new trial.