MARGARET WILLIAMS, *Appellee*, v. PETER BENSON, *Appellant.*

No. 17,709.

SYLLABUS BY THE COURT.

1. PUBLIC STREETS—*Footmen—Right to Cross—Care. Required.* Foot-travelers have the right to assume that others who may be lawfully using a public street or highway with them will exercise a proper degree of care, and when crossing a public street are not obliged to be constantly on the lookout to avoid injury from others.

2. AUTOMOBILES—*Duty Required of Driver on Public Streets.* The duty of a driver of an automobile to keep a lookout to avoid injury to pedestrians and others using the public streets is the same as that which the law imposes upon the driver of a team, except that the ordinary speed of such machines increases the danger of injury to others in the street and calls for more watchfulness on the part of the driver.

3. PUNITIVE DAMAGES—*Evidence—Findings.* The evidence and findings in this case are held sufficient to justify the allowance of punitive damages.

Appeal from Cloud district court. Opinion filed June 8, 1912. Affirmed.

*F. W. Sturges, Fred W. Sturges, jr.,* and *Theodore Laing,* for the appellant.

*Park B. Pulsifer,* and *Charles L. Hunt,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff, while crossing a street in the city of Concordia, was run over and injured by an automobile owned and driven by the defendant. She recovered damages and the defendant appeals. Seventh street, where the accident occurred, extends east and west from the more thickly settled part of the city to and past the fair grounds. During the fair time in September, 1909, there were autombile races in progress and a great deal of travel to and from the grounds. The defendant was driving his car past the fair grounds, going east on Seventh street. The plaintiff, who lived on the north side of the street about five hundred feet east of the grounds, was returning to her home from a neighbor's across the street. At the south side of the street she looked to the west and saw a machine, which proved to be the defendant's, coming east. It was then about eight hundred feet away. She then looked to the east and saw no vehicles coming from that direction, and started to cross. There was a hack standing at the extreme south side of the street with the horses headed east. She passed in front of the team and continued across the street without looking again to the west. The defendant was driving his car at a rate of speed in excess of twenty miles an hour. He was a little to the north of the center of the road and failed to look ahead. He testified that he did not see the plaintiff until just before the machine struck her. He gave no signal except to

cry out a warning after it was too late. At the moment when the car struck the plaintiff she had reached a point not far from the north side of the street. These facts appear from the special findings; and the jury further found that the defendant was not exercising proper care. Johnson, the hack driver, was standing in his seat watching the races. He testified that he saw defendant just before the accident and that the defendant was looking at the races and not where he was driving; that he was north of the center of the road, the machine being headed slightly northeast. After the defendant saw the plaintiff he made every effort to stop the machine, and it ran into the bank on the north side of the road thirty or forty feet from where the plaintiff was struck.

The jury awarded the plaintiff $3000 for actual damages and $250 as punitive damages. There is no contention that the amount allowed for actual damages is excessive, in view of the serious injuries sustained, but it is contended that there was no basis for punitive damages. Both findings and evidence show such gross negligence on the part of the defendant as in our opinion sustains the allowance of smart money. There was testimony also that immediately after the accident, and while the plaintiff lay unconscious upon the street, the defendant, when asked why he had run over her, complained that she had no right to be in the road and that she had broken the lamps on his car.

The finding of the jury that the plaintiff was in the exercise of ordinary care is fully borne out by the testimony. A public road or street is not a place of such danger as to make it negligence *per se* for a person about to cross it to fail to look and listen. The circumstances might be such that a jury would be warranted in holding that a failure to do either was not negligence. Other cases may arise where ordinary care would require one to exercise the faculties both of sight and hearing before attempting to cross. Here the

plaintiff looked before starting across and saw the car eight hundred feet away. She had the right to assume that it was not running at such an excessive speed as to make it dangerous for her to attempt to cross a street the traveled portion of which was twenty-four feet wide, with ample room for a car to pass without striking her, provided the driver was on the lookout and using ordinary care. Foot-travelers have a lawful right to the use of a public highway, and, contrary to the notion which seems to be entertained by some drivers of automobiles, such travelers have the right to presume that others who may be lawfully using the highway will exercise a proper degree of care. Persons about to cross a public street are not required to be constantly upon the lookout to avoid injury from other travelers. The rule which imposes upon one who is about to cross the track of a steam railway the duty to look for approaching trains does not apply to a person using the streets of a city or a country highway. The railway track is itself a sign of danger, because trains are run at high speed upon a fixed track, usually under conditions which make it impossible for those operating them to avoid injury to persons upon the track. In *Seifert v. Schaible,* 81 Kan. 323, 105 Pac. 529, it was ruled in the syllabus that:

"Pedestrians may rightfully cross streets at places other than the crosswalks at the intersection of streets; and it is the duty of a driver of a team to keep a lookout for pedestrians as well as for vehicles passing along and over the street and exercise reasonable care to avoid a collision with them, and if he fails to do so and by reason thereof a pedestrian is injured the driver or his employer is responsible for the injury." (Syl. ¶ 1.)

The duty of a driver of an automobile to avoid injury to pedestrians and others using the public streets is the same as that which the law imposes upon the driver of a team, except that the higher speed at which such machines usually run greatly increases the

Williams v. Benson.

danger of injury to other travelers and naturally calls for more constant watchfulness on the part of the driver than would be required of one driving a team of horses. A case which illustrates the rule as applied to the driver of automobiles is *Hennessey v. Taylor,* 189 Mass. 583, 76 N. E. 224. In the syllabus it was held:

"A traveller on foot is not necessarily negligent because he starts to cross a street without first looking or listening to ascertain whether an automobile is approaching. Such a traveller has a right to assume that other persons using the highway with him will exercise a proper degree of care." (Syl. ¶ 1.)

It is not negligence *per se* for a pedestrian to cross in front of an approaching street car which he plainly sees. (*Railroad Co. v. Gallagher,* 68 Kan. 424, 75 Pac. 469; *Marple v. Railway Co.,* 85 Kan. 699, 702, 118 Pac. 690.)

For cases illustrating the same rule as applied in automobile cases, see *Benoit v. Miller,* (R. I. 1907) 67 Atl. 87, and *Kathmeyer v. Mehl,* (N. J. Supr. Ct. 1905) 60 Atl. 40. To the same effect see the motorcycle case of *Johnson v. Telephone Co.,* post, p. 441. The question of contributory negligence in such cases is always for the jury to determine, and as stated, the evidence in the present case abundantly sustains the finding that the plaintiff was in the exercise of due care. We find no error in the instructions or in the admission of evidence.

The judgment is affirmed.