No. 29,097.

THE CITIZENS FINANCE COMPANY, *Appellee*, v. E. L. SEAMANS et al., *Defendants;* MYRTLE SEAMANS et al., *Appellants.*

(284 Pac. 422.)

Opinion filed February 8, 1930.

*Carl H. Davis,* of Wichita, and *Harry B. Davis,* of Anthony, for the appellants.

*C. H. Pugh* and *Lloyd Cooper,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:  The Citizens Finance Company brought this action in May, 1928, and recovered a judgment in September, 1928, against E. L. Seamans and Fred Seamans, doing business as the Seamans Transportation Company, for $1,342.24.  On October 26, 1928, E. L. Seamans and his son, Fred Seamans, executed a bill of sale which purported to transfer all of the transportation business, including automobiles, busses, equipment, repair parts and interests in certain transportation contracts for one dollar and other valuable considerations.  In an effort to obtain payment upon the judgment, plaintiff instituted a garnishment proceeding, which required the Eagle Publishing Company and the Beacon Publishing Company to answer whether they owed the Seamans Transportation Company or had any property in their possession or control belonging to the company.  The Eagle Publishing Company answered that they owed

the transportation company a specified amount, and an order was made requiring them to pay it into court, which was done. A few days later, the Eagle Publishing Company asked permission to amend its answer, which it stated had been made in good faith, but that it had since learned that Myrtle Seamans and Pearl Seamans claimed to be entitled to the money garnished and paid into court. Myrtle Seamans, the wife of E. L. Seamans, and Pearl, the wife of Fred Seamans, intervened in the court, set up a claim of ownership of the business, evidenced by a bill of sale, dated October 26, 1928. The issue tried out was the validity of the sale, the plaintiff's claim being that it was not a good-faith transaction, but was made to hinder and defraud creditors. Upon the evidence the court found in favor of plaintiff, holding that the sale was fraudulent and void and that the money held by the garnishment proceeding is owned by E. L. Seamans and Fred Seamans, and that the intervening wives had no title or interest in it. The interveners appeal from this decision.

On their part they claim that E. L. Seamans had borrowed $1,500 from his wife, Myrtle, and executed a note to her, on February 25, 1925, for the amount. It was also claimed that he borrowed $2,500 from her on June 25, 1925, and gave her a note for the amount. The claim was that his wife had inherited a farm from her grandmother in the East, which was sold and the proceeds loaned to her husband; that the indebtedness had not been paid at the time of the sale, October 26, 1928; and that the property was transferred to her in payment of the indebtedness. There is no direct evidence as to the alleged fraud. It was shown that when she purchased the property no inquiry was made as to whether it was a profitable or a losing business; that the company was in fact insolvent; that when the bill of sale was executed there was no discussion of the business affairs of the company; that the notes were surrendered at that time; and that E. L. Seamans wrote across them "Paid 10-26-28"; afterwards he tore up the canceled notes and threw the pieces into a wastebasket; later he changed his mind and picked them out of the basket, put them together and pasted them on pieces of paper. That the sale was made to his wife, but when the bill of sale was executed the name of his son Fred's wife was inserted in it. That there was no change in managing the business after the bill of sale was made, but was carried on the same as before, E. L. Seamans and Fred Seamans doing the work; E. L. Seamans drives cars, keeps the books, at a salary of $130 per month, and that Fred Sea-

mans works for the company for a salary of $160 per month; that the money taken in from the business is put in the bank in the name of Myrtle Seamans. The business had been started in 1925, and a part of it was to haul the *Eagle* paper and the *Beacon* paper to points out of Wichita.

In speaking of the transfer E. L. Seamans said it was not his intention to transfer any of the business to Pearl Seamans, but when they went to sign the bill Fred asked them to put her name in the bill of sale, and so he wrote it in. On the question of the pressure of creditors about the time of the transfer, it appears that about a month before an execution had been issued against them by an oil company on a judgment amounting to $2,501.98; that on August 4, 1928, an action was begun against them by the Kansas State Bank, in which a judgment was later rendered against the defendants in the sum of $1,279.50; that on October 1, 1928, a judgment was rendered in favor of the Citizens Finance Company, against the partnership, in the sum of $1,364.84; that on October 26, 1928, another suit had been brought by the Craig Oil Company, and that they owed the Equitable Investment Company, on notes given for borrowed money, a sum in excess of $5,317. E. L. Seamans, after the sale, acted as if he was the head of the company and in possession of the property, substantially in the same way as he had done for the three or four years past. Myrtle 'Seamans said that when the bill of sale was executed she did not know and did not ask whether or not the company was making or losing money, and said that E. L. Seamans told her nothing and she asked nothing.

The only question presented here is that the judgment is not supported by the evidence. It is argued that the bill of sale was in legal form, recited a good consideration, that it had been shown by direct evidence it was a real consideration, and that there was no direct evidence contradicting it. In so many cases of this character, where there is a claim that a sale of all the property by a failing or insolvent creditor, to his wife, or some other member of the family, is made to defraud creditors, direct proof of fraud is not easily obtained. In most cases it must be established by circumstances surrounding the transaction. It has been said:

"It is rare indeed that fraud can be proved by the direct and positive testimony of reliable witnesses. It is an almost invariable rule that it can only be deduced from a consideration of many facts and circumstances; from the conduct, statements, dealings, and surroundings of the parties, from their relationship to each other, and from the many little doings of the parties which indicate their secret motives, which as a rule are studiously concealed

from those it is intended to wrong." (*Morse v. Ryland,* 58 Kan. 250, 259, 48 Pac. 957.)

The fact that a formal bill of sale was executed and that the parties testified that a valuable consideration was paid by the wife, is not conclusive upon the creditor. Nor does the fact that some of their direct evidence was not contradicted compel the acceptance of their evidence as true. In *Cobe v. Coughlin,* 83 Kan. 522, 112 Pac. 115, it was held that:

"A court or jury is not required to believe a witness or accept his statements as conclusive merely because there is no direct evidence contradicting his statements." (Syl. ¶ 2.)

See, also, *Fenn v. Kansas Gas & Electric Co.,* 118 Kan. 131, 234 Pac. 77; *Reeves v. Sroade,* 124 Kan. 423, 260 Pac. 609.

The good faith of the transaction was a question of fact to be determined by the trial court, and it is found that the sale was made in fraud of creditors. This court is not a fact-finding tribunal and the credence to be given to the statements of witnesses was a function for the trier of the facts. Besides the peculiar circumstances of the sale set forth in the record, there may have been much in the appearance of the witnesses, and their manner of testifying at the trial, that tended to discredit their evidence. In addition to the fact that Mr. Seamans and his son were being pressed by creditors, that several judgments had been rendered against them just about the time of the sale, and that they were in fact insolvent, the sale of the property to their wives naturally gave rise to suspicions. Where the transfer is from husband to wife, the circumstances are to be closely scrutinized, to see that it is free from fraud. In *Gollober v. Martin,* 33 Kan. 252, 6 Pac. 267, it was said:

"A departure from the usual course of business in the transfer of property has uniformly been held to be a suspicious circumstance, a badge of fraud, to be considered in determining the *bona fides* of the transaction." (p. 253.)

Of course, a debtor may honestly prefer a creditor, and if the wife is in fact a creditor she may be preferred, but it is essential to a valid transfer that it be made in good faith. If the transaction was not made in good faith, but was an attempt to shift the title to the property so as to defraud creditors, the transfer would be void. A circumstance that no doubt had weight with the court is that the sale was first made to the wife of E. L. Seamans, to whom he claimed money was owing, and the bill of sale was prepared indicating a sale alone to her, but after the bill of sale was prepared,

the wife of Fred Seamans was added as a vendee, although it was not claimed or shown that she was a creditor of the vendors. The so-called notes of Mrs. Seamans were first preserved and an entry of payment made thereon. Later they were torn up and thrown away and still later the parts were rescued and pasted on sheets of paper. It was further shown that the business was conducted after the claimed sale substantially as before, and the men were said to have been employed at monthly salaries. Mrs. Seamans says that she bought the property without inquiry as to the condition of the business, was told nothing as to whether it was a profitable or a losing business, and that she asked nothing in that respect. On the whole testimony we cannot hold that the finding and judgment of the court was without the necessary support.

The judgment is affirmed.