No. 30,425.

MARGARET SHROUT, *Appellee,* v. EARL BIRD, *Appellant.*

(9 P. 2d 673.)

Opinion filed April 9, 1932.

Carr W. Taylor and Harry H. Dunn, both of Hutchinson, for the appellant.

J. H. Tincher, Don Shaffer, both of Hutchinson, and George W. Cox, of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case was here before. (*Shrout v. Bird*, 132 Kan. 617, 296 Pac. 369.) It was an action for damages for injuries sustained by plaintiff when she was struck, knocked down and dragged some distance by defendant's delivery truck at a street intersection in Hutchinson.

Madison street runs north and south and is forty-four feet wide; and First avenue, which is seventy-two feet wide, runs east and west intersecting it. Plaintiff resided on the north side of First avenue a short distance east of the intersection. According to the evidence for plaintiff, it appears that on March 5, 1929, she and a neighbor, Mrs. Skinner, went out for an evening walk some distance toward the southwest. As they returned they crossed Madison eastward and then started north across First avenue. As plaintiff and her companion were about to step into First avenue they looked eastward and saw defendant's truck nearly a block away coming west on the north side of the street. The women had taken but a few steps into the street when the truck hit them. Plaintiff testified:

"It knocked me under the truck and dragged me around the corner. . . . I was not knocked insensible, I was stunned but I knew what was going on: When the car stopped I was lying on my right side. . . . So I had to lie there until some one came to me, and a lady came and also the driver of the truck, and pulled me from between the wheels toward the curb on that corner, the southwest corner, and they carried me over and put me on the parking by the curb or on the curb; and the driver bent over me and I asked him why in the world he didn't try to miss us, and he said, 'I didn't see you until I hit you.'"

On cross-examination she testified:

"Q. Anyhow, you didn't look to see what became of the car? A. I looked up and saw this truck advancing on the north side of the street.

"Q. And that was about 300 feet away? A. Yes, sir.

"Q. And then you never looked again? . . . A. No, I didn't. . . .

"Q. Do you remember what part of the car, when you were knocked down, you caught hold of? A. Well, I thought it might have been the axle. I grabbed the first thing.

"Q. You grabbed hold of it? A. Yes, sir. . . . I do not know how many feet the car dragged me in that position. I am not a good judge of distance, but it dragged me around catawampus over toward Marshall's house. [West of the intersection.] I don't know how far it was."

Mrs. Skinner testified:

"We walked to the curb of the parking. We looked each way to see if there was any traffic and this Ford truck, Wardrobe Dry Cleaning truck, was coming from the east, at about the bridge. . . .

". . . The car came like a rocket from Cow creek bridge while we were taking two steps and hit me before I had time to think.

"The bridge is about three-quarters of a block down the street. This would be an estimate."

There was a good deal of this sort of evidence adduced in behalf of plaintiff. On the other hand, the evidence on defendant's behalf was that plaintiff and her companion were walking diagonally from the west side of Madison street towards the northeast corner of the intersection when the truck hit them; that the driver of the truck stayed on the north side of First avenue until he passed the center line of the intersection and that he was headed south on the west side of Madison before the accident occurred. The fair inference of that evidence, if believed, would be that defendant's truck driver was operating the delivery truck as he had a right to do and that the accident occurred because of negligence or contributory negligence of plaintiff.

The jury returned a verdict for plaintiff and answered special questions, some of which read:

"4. Before starting to cross First avenue to the north, did the plaintiff look to the east and observe the defendant's car coming from the east? A. Yes.

"5. Was the defendant's truck traveling in a southwesterly direction when it struck the plaintiff? A. Yes.

"6. About how far did the defendant's truck go before it was possible to stop it after striking the plaintiff? A. About thirty (30) feet.

"7. Could the plaintiff have seen the defendant's car coming west on Madison avenue, after she started across First avenue, had she looked down said street? A. Yes.

"8. Did the plaintiff while proceeding in a northerly or northeasterly direction across First avenue look in front and to the right to see whether defendant's automobile was approaching? A. No.

"9. Did the plaintiff do anything to avoid being struck by the defendant's automobile? A. No.

"10. Did the driver of defendant's car do everything in his power to stop the automobile and avoid striking the plaintiff when he first saw her? A. Yes.

"11. Do you find that plaintiff through her own negligence contributed to the injuries complained of? A. No.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"13. Was the plaintiff walking diagonally across said intersection in a north-easterly direction from the southwest corner of said intersection of Madison

street and First avenue west at the time she was struck by defendant's automobile? A. No."

Defendant's motions to set aside the special findings, for judgment notwithstanding the general verdict, and for a new trial were overruled, and judgment was entered for plaintiff.

Defendant assigns and argues certain errors, the first of which relates to the overruling of his demurrer to plaintiff's evidence, his contention being that she was shown to have been guilty of contributory negligence. Plaintiff testified that before she stepped into First avenue she looked to the east and saw defendant's delivery truck coming westward on the north side of First avenue, but that she did not look in that direction again. The jury's findings are to the same effect. It does not appear that this evidence or these findings convict the plaintiff of contributory negligence. (*Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 234 Pac. 77.) Taking plaintiff's evidence as true—which we must do because the jury believed it—there was nothing about the fact that the truck was coming west on the north side of the street which required her to keep her eye constantly upon it. She could rightfully presume it would keep to the north side of the street until it had reached the intersection. (*Mosso v. Stanton Co.*, 75 Wash. 220, L. R. A. 1916D 943.) She could rightfully presume it would be driven at reasonable speed and that it would not cut the corner and thereby imperil her safety. True, the jury finds she did not do anything to avoid being struck, but what should she have done? Pedestrians are not required to scatter in all directions when the driver of a delivery truck runs amuck among them. We can discern no analogy between the instant case and those of *Hanabery v. Erhardt*, 110 Kan. 715, 205 Pac. 352; *Curry v. Wichita Railroad & Light Co.*, 128 Kan. 537, 278 Pac. 749; and *Antrim v. Speer*, 133 Kan. 297, 209 Pac. 643, which counsel for defendant press upon our attention. The jury found that no negligence on plaintiff's part contributed to her injuries and the record does not suggest any evidence of such negligence which the jury were bound to believe.

Defendant presents an argument based upon what he chooses to designate as the physical facts to disprove the evidence in plaintiff's behalf. But that argument is predicated on the assumed truth of certain testimony concerning the skid marks of the truck showing that it had kept to its own side of First street until it passed the

center of the intersection and then turned south on Madison. The jury were not bound to accept that evidence as true even if it were not contradicted. (*Citizens Finance Co. v. Seamans,* 129 Kan. 743, 284 Pac. 422; *Young v. Lucas,* 132 Kan. 484, 296 Pac. 362.) Moreover, defendant's evidence on this point really proved too much, because if it were true plaintiff would not have been struck by defendant's truck at all, since she was not thereabout. Yet one indisputable fact is that she was struck, run down and injured, so in a conflict of evidence based on so-called physical facts the jury were bound to make a choice of those most worthy of credence, and their determination of that issue cannot be disturbed.

Counsel for defendant would have us attach some present significance to the record made in the first trial of this action, and also upon the record made in the trial of the companion case of Mrs. Skinner against this defendant. Those matters are no part of this record. Therefore we cannot take them into consideration. This appellate review is concerned with and limited to matters developed in the trial of this case as presented within the compass of this record.

Error is predicated on an instruction which the trial court gave touching the duty of pedestrians about to cross a street. It told the jury that such persons are not bound to be continually on the lookout to avoid injury from vehicles; that while they must be prudent themselves and use reasonable care for their own protection, they have the right to assume that automobile drivers will exercise a proper degree of care and will observe the traffic laws and ordinances. It is needless to reproduce the criticized instruction in full. It was a fair statement of pertinent law and contained no inconsistency.

Complaint is also made of the trial court's refusal to give an instruction asked by defendant. However, a careful perusal of those given reveals that the pertinent law was fairly and comprehensively stated, and error is not shown under this assignment.

It is finally contended that passion and prejudice are manifestly inherent in the verdict—presumably because of the amount, $2,-062.15. It is for a good round sum, but the evidence shows that the woman, who was thirty-six years old and in good health prior to the accident, suffered various painful injuries, her nerves were shattered, and that she is probably partially disabled for the rest of her life. An examination of the record does not cause this court that

misgiving of probable injustice we often experience in dealing with questions of excessive verdicts. In *Hardwick v. Railways Co.,* 114 Kan. 843, 845, 220 Pac. 1043, it was said:

"Error based on an excessive verdict and judgment is seldom an easy question for an appellate court to solve, and it is peculiarly difficult where the sum allowed is for pain and suffering. Of course, rules for dealing with excessive verdicts are not altogether wanting; if on reading the record the conscience of the court is shocked at the verdict, a remittitur or reversal is ordered; but there is no uniform yardstick, no hard and fast rule, by which the excessiveness of a verdict can be measured and determined as in ordinary mathematical calculations. In this case, when we give full credence to the plaintiff's testimony touching his pain and suffering, as we are bound to do because the jury gave it such credence, the verdict and judgment are not so large as to produce such psychological reaction on the judicial conscience as to impel it to order a reduction or reversal."

See, also, *Fenn v. Kansas Gas & Electric Co.,* 118 Kan. 131, 234 Pac. 77; *Ellis v. Kansas City Public Service Co.,* 131 Kan. 555, 559-561, 292 Pac. 939.

A painstaking review of this case reveals nothing irregular or erroneous which would permit the judgment to be disturbed. It is therefore affirmed.