No. 30,489.

The Peoples National Bank of Ottawa, *Appellee*, v. C. A. Diven, and Edith E. Diven and Julia A. Crouse, Interveners, *Appellants*.

(10 P. 2d 883.)

Opinion filed May 7, 1932.

*H. M. Funston*, of Ottawa, and *Robert H. Clogston*, of Eureka, for the appellants.

*F. M. Harris* and *B. W. Kelsey*, both of Ottawa, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: Two separate actions commenced by the Peoples National Bank of Ottawa, Kan., were consolidated and tried together in the district court; the first, an injunction suit against C. A. Diven and his wife, alleging fraudulent conveyance of certain real property and asking that the defendants be restrained and enjoined from conveying or mortgaging any of their real estate except their homestead, and that certain deeds already made be set aside; and the second, an action for judgment on two notes given by C. A. Diven.

The answer of C. A. Diven in the first case after some admissions was a general denial, and the answer of his wife alleged that one of the tracts mentioned in the petition was a gift to her from her father, but had been conveyed to her and her husband jointly, and that the other tract was conveyed to her by her husband for his indebtedness to her for money advanced by her to him, setting forth the items of the indebtedness.

A supplemental petition was filed in this first case alleging that

judgment had been procured against C. A. Diven in the second case, that an execution thereon had been returned "no goods found," and that if the conveyances made by Diven to relatives were sustained, he was wholly insolvent. In the second case attachment orders were procured and issued to the sheriffs of Franklin and two other counties at the time of filing the petition, and after service and confirmation thereof, the wife and Mrs. Julia A. Crouse, the mother-in-law of C. A. Diven, filed intervening petitions by leave of court in which they separately claimed to be the owners of the real property attached as having been conveyed to them separately by the defendant C. A. Diven for valuable considerations.

The answer of the plaintiff to the two intervening petitions was that the sheriff had made a return on an execution on the judgment against defendant of no property found, that the defendant had been the owner of a large amount of land at the inception of the indebtedness to the plaintiff and that these and other transfers made by defendant to relatives at the time of the maturity of the bank indebtedness and demand for its payment, if sustained, rendered him wholly insolvent, and both interveners knew of defendant's indebtedness to the bank and the purpose of the defendant in making such transfers to them and other relatives.

The trial court made findings of fact and conclusions of law and rendered judgment for plaintiff, from which the defendants and interveners appeal, assigning error in making the findings contrary to the evidence, the conclusions contrary to the law and in overruling the motion for a new trial. In addition to findings as to details the court concluded with the following findings of fact:

"On August 23, 1930, shortly after the return of Diven and Devilbiss from Greenwood and Woodson counties, C. A. Diven executed deeds to his mother-in-law, Julia A. Crouse, and his wife, Edith E. Diven, to practically all of the real estate which stood in his name with the exception of the homestead occupied by him and his wife.

"I find that these deeds were executed without consideration and for the purpose and intent of putting such property as the defendant, C. A. Diven, had beyond the reach of his creditors.

"The property owned by C. A. Diven after the conveyances hereinbefore mentioned were executed was wholly insufficient to satisfy the judgment rendered in action number 12,087.

"I find generally for the plaintiff upon all issues."

The court made the following conclusion of law:

"The deeds in evidence as exhibits seven, eight, nine, ten and eleven

executed by C. A. Diven were fraudulent in their inception and conveyed no title to the grantees therein."

This is almost completely a fact case. There is very little contention as to the evidence supporting the findings as far as C. A. Diven is concerned. It shows that he made two financial statements for the bank for the purpose of procuring credit therefrom, one in 1926 and the other in January, 1929, in both of which he definitely stated he owed nothing to relatives. The last statement shows he owed the plaintiff bank at that time $3,600, and the evidence shows he shortly thereafter increased his indebtedness there to more than $10,000. In both statements he definitely promised he would immediately notify the bank of any material unfavorable change in his financial condition.

The evidence shows his loan became due August 28, 1930, and between the 15th and 20th of August a bank officer checked over the chattel security with him and told him the amount above $3,000 on the cattle would have to be paid or secured by August 28, when the note matured. On August 20 the bank officials wrote defendant a letter confirming this conversation. On August 23 the defendant, his wife, his mother-in-law and his son went to the office of his attorney and he there executed seven deeds to his relatives, mostly to the wife and mother-in-law, covering all the property he owned except his homestead. The bank foreclosed its chattel mortgage on the cattle after August 28, and after crediting the amount derived therefrom on the notes it left a balance of nearly $8,000 due the bank. The defendant denies having any such conversation with the bank official and denies having received any such letter.

Counsel for the interveners most seriously and earnestly contend that the findings as to want of consideration for their deeds and their knowledge of the purpose and intention of Diven to put his property beyond the reach of his creditors, is wholly unsupported by the evidence, asserting the fact that no witness testified to the contrary as to the existence of the indebtedness of Diven to his wife and his mother-in-law, and that all the testimony concerning the same was that of the interveners, giving the items, dates, purposes and amounts of it covering many years, and that of Diven acknowledging and admitting the indebtedness to them as they claimed it to be. In this contention the appellants overlook the long-established rule that it does not require contradictory evidence or a conflict therein to justify a court or jury in totally disregarding the evidence given as un-

worthy of credit. The human element of personal and selfish interest in the result is always proper for consideration in such matters.

"A court or jury is not required to believe a witness or accept his statements as conclusive merely because there is no direct evidence contradicting his statements." (*Cobe v. Coughlin,* 83 Kan. 522, syl. ¶ 2, 112 Pac. 115.)

"The triers of the facts are not bound to believe the testimony given on behalf of a litigant, even in the absence of express contradiction or rebuttal." (*Fenn v. Kansas Gas & Electric Co.,* 118 Kan. 131, syl. ¶ 4, 234 Pac. 77.)

"Rule followed that a jury is not bound to accept as true the testimony of a witness even though it be not contradicted by direct evidence." (*Young v. Lucas,* 132 Kan. 484, syl. ¶ 1, 296 Pac. 362.)

While there may properly be business transactions between relatives deserving just as much consideration as to fair dealing as any other, yet when accompanied with and surrounded by peculiar circumstances they are said to give rise to suspicions and to especially invite close scrutiny. Some of such peculiar circumstances here brought out in evidence as to the interest of Mrs. Crouse are the erasures in the date of the two contracts of August 2, 1930, the making up of the statement of account on August 23 and the destruction of the papers of original or former entries, the typewriting of the contract for use in court, the doubt as to June 16, 1917, being the correct date of note given her by defendant for $955.02, the extreme age of the notes and running accounts without settlement and the hurried settlement after August 20 and before August 28. These matters, together with the impressions that may have been made upon the mind of the court by observing the conduct of these very greatly interested witnesses upon the witness stand, their promptness, candor, and numerous other matters to be considered in determining the credit to be given to their testimony, properly go with the words uttered upon the stand and have their place and part in the process of arriving at the facts in the case. Our only duty in reviewing a situation of this character is to determine if there was sufficient evidence to support the court's finding in this regard, and we think there was.

"In so many cases of this character, where there is a claim that a sale of all the property by a failing or insolvent creditor, to his wife, or some other member of the family, is made to defraud creditors, direct proof of fraud is not easily obtained. In most cases it must be established by circumstances surrounding the transaction. . . . The good faith of the transaction was a question of fact to be determined by the trial court, and it is found that the

sale was made in fraud of creditors. This court is not a fact-finding tribunal and the credence to be given to the statements of witnesses was a function for the trier of the facts. Besides the peculiar circumstances of the sale set forth in the record, there may have been much in the appearance of the witnesses, and their manner of testifying at the trial, that tended to discredit their evidence. In addition to the fact that Mr. Seamans and his son were being pressed by creditors, that several judgments had been rendered against them just about the time of the sale, and that they were in fact insolvent, the sale of the property to their wives naturally gave rise to suspicions. Where the transfer is from husband to wife, the circumstances are to be closely scrutinized, to see that it is free from fraud." (*Citizens Finance Co. v. Seamans,* 129 Kan. 743, 745, 746, 284 Pac. 422.)

"While in transactions between relatives fraud is not presumed from the mere relationship of the parties, yet such relationship may be taken into consideration as a circumstance bearing upon the question of the good faith of the transaction." (*Hardcastle v. Hardcastle,* 131 Kan. 319, syl. ¶ 1, 291 Pac. 757.)

Appellants urge that the court confused the interest of the two interveners where the purposes of the conveyances were different, in that those to the wife were only as security for the indebtedness to her while those to Mrs. Crouse were outright purchases. The finding of the court that the scheme and device was the same as to both interveners does not indicate that the distinctive facts were not separately considered.

Appellants cite *Schram v. Taylor,* 51 Kan. 547, 33 Pac. 315, and *Hasie v. Connor,* 53 Kan. 713, 37 Pac. 128, and many other decisions holding that a creditor may in good faith take property of his debtor at a fair valuation in payment of an honest debt, even when it absorbs all the property of the debtor, and not be guilty of defrauding anyone and that, too, even if he is a relative of the debtor, and that he may properly hold his preference thus honestly acquired for a valuable consideration. This is good law, but the findings take the other view of the facts and circumstances as to valuable consideration and knowledge of a different design and purpose on the part of the principal defendant. Facts and circumstances of similar character but leaning the other way on these two very important elements would properly lead to different findings and then necessarily to a different conclusion.

A very unusual line of evidence was furnished in support of the motion for a new trial, going largely to establish the date of one of the notes to be the correct date on which it was executed, and serious objection is made to the setting out in the brief of the appellee the remarks of the trial judge as to the difference between

the form and details of the original note and the similar blank recently found and produced. The recently found blank was purposely introduced by the appellants to show a similarity and thereby support the correctness of the date, and the remarks of the judge simply point out differences observed by him. The abstract or counter abstract are the proper places for setting out the part of the evidence and record necessary for review, but frequently omitted parts are supplied in the briefs with opportunity afforded for criticism or attack. We see no error in doing so in this case and no error in overruling the motion for a new trial. A change of the finding that the date given was in fact the actual date of the note in question would not in itself be sufficient to have changed the results with the other findings remaining as they were.

The judgment is affirmed.